Patricia H. COGHILL, Appellant,

v.

Henry Wyatt GRIFFITH and
Syble Griffith, Appellees.

No. 12–10–00346–CV.

Court of Appeals of Texas,
Tyler.

Jan. 18, 2012.

Gregory D. Smith, for Appellant.

Billy D. Anderson, T. Brooke Farnsworth, T. Ragon Richey, J. Mark Mann, Robert M. Minton, M. Keith Dollahite, Appellees.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

This appeal involves the construction of a royalty reservation in a 1961 Rusk County deed. Appellant, Patricia H. Coghill, contends that under the future lease clause, the grantor reserved one-eighth of the royalty (a fraction of royalty). Appellees, Henry Wyatt Griffith and Syble Griffith, contend the grantor reserved only a one-eighth of a one-eighth royalty (a fractional royalty). In three issues, Coghill contends the trial court erred in granting summary judgment for the Griffiths determining that the royalty reservation was a fractional royalty and that the issue of attorney's fees should be remanded for reconsideration. We reverse and render.

### BACKGROUND

In 1961, G.P. Wood (Coghill's predecessor in interest) conveyed 191.12 acres of land in Rusk County to Henry D. Welch (the Griffiths' predecessor in interest). This 191.12 acres was subject to a 1953 oil and gas lease, which had a primary term of ten years. The deed included the following language:

> .... [T]his Grantor excepts from this conveyance and reserves unto himself, his heirs and assigns an undivided one-

eighth (1/8) interest in and to all of the oil royalty [and] gas royalty.... It is *understood and agreed that this sale is made subject to the terms of said lease,* but the Grantor reserves and excepts unto himself, his heirs and assigns an undivided one-eighth (1/8) of all royalties payable under the terms of said lease, as well as an undivided one-eighth (1/8) of the usual one-eighth (1/8) royalties provided for in any future oil, gas and/or mineral lease covering said lands or any part thereof....

Nevertheless, neither the Grantee herein, nor his heirs, executors, administrators, and assigns of the Grantee shall make or enter into any lease or contract for the development of said land or any *other portion of the same for oil, gas or other minerals, unless each and every* such lease, contract, leases or contracts, shall provide for **at least** a royalty on oil of the usual one-eighth (1/8) to be delivered free of cost.... [A]nd in the event Grantee, nor [sic] the heirs, executors, administrators and assigns of the Grantee, or as in the status of the fee owners of the land and minerals, or as a fee owner of any portion of the same, shall operate or develop the minerals therein, Grantor shall own and be entitled to receive as a free royalty hereunder, (1) an undivided one-sixty fourth (1/64) .... (emphasis added).

The 1953 lease expired, and in 1976 and 1981, Welch signed new oil, gas, and mineral leases with an increased royalty of three-sixteenths for each lease. In 1980, Coghill inherited Wood's royalty interest. In 1981, Welch signed a division order that showed both he and Coghill would receive one-eighth of the three-sixteenths royalty for minerals produced from the subject property. In 2004, the Griffiths purchased the subject property from Welch's successors and began receiving one-eighth of the three-sixteenths royalty under the existing leases. Coghill also was receiving one-eighth of the three-sixteenths royalty under the existing leases.

By 2007, the Griffiths had taken the position that the 1981 division order was based on an incorrect construction of the 1961 deed's mineral reservation. They contended that they and Coghill did not own equal royalty interests. Instead, the Griffiths maintained that Coghill was entitled to only one-eighth of one-eighth royalty, even if the lease provided for more than a one-eighth royalty. They asserted further that they were entitled to one-eighth of the three-sixteenths royalty under the 1976 and 1981 leases and to the additional one-eighth of one-sixteenth royalty that Coghill had been receiving. Therefore, they asserted that they owned two sixty-fourths of the royalty and Coghill owned a one sixty-fourth fractional royalty. According to the Griffiths' construction, only they, and not Coghill, benefitted from the increased royalty in the 1976 and 1981 leases.

The lease operators filed a petition in the trial court under the Uniform Declaratory Judgments Act, Chapter 37 of the Civil Practices and Remedies Code, seeking construction of the royalty reservation in the 1961 deed. Both Coghill and the Griffiths filed traditional motions for summary judgment in support of their respective positions. The trial court granted the Griffiths' motion for summary judgment determining that they owned two sixty-fourths of the royalty under the 1976 and 1981 leases and that Coghill owned a one sixty-fourth royalty interest. Coghill timely filed this appeal raising three issues: (1) the trial court improperly denied her motion for summary judgment and granted the Griffiths'; (2) the trial court improperly construed the 1961 deed; and (3) the

issue of attorney's fees should be remanded to the trial court for reconsideration.

## STANDARD OF REVIEW

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim,* 315 S.W.3d 860, 862 (Tex.2010). When, as here, both sides move for summary judgment on the same issue, and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). We then render the judgment that the trial court should have rendered. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex. 2009).

■ Neither party, either at trial or on appeal, has alleged the 1961 deed was ambiguous. When an instrument is unambiguous and the dispositive facts are not in dispute, a court may grant summary judgment and render a declaratory judgment regarding the parties' rights under the instrument. *Barrand, Inc. v. Whataburger, Inc.,* 214 S.W.3d 122, 131–32 (Tex. App.-Corpus Christi 2006, pet. denied); *TC Dallas # 1, LP v. Republic Underwriters Ins. Co.,* 316 S.W.3d 832, 837 (Tex. App.-Dallas 2010, no pet.).

## DEED CONSTRUCTION

■ When a deed is unambiguous, our primary duty in construing it is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the four corners rule. *Luckel v. White,* 819 S.W.2d 459, 461 (Tex.1991). The actual intent of the parties as expressed in the deed as a whole prevails over arbitrary rules. *Id.* at 462. We ascertain the parties' intentions as expressed in the document by considering the entire writing and

attempting to harmonize and give effect to all of its provisions with reference to the whole document. *Frost Nat'l Bank v. L & F Distribs., Ltd.,* 165 S.W.3d 310, 311–12 (Tex.2005). We construe the document from a utilitarian standpoint bearing in mind the particular business activity sought to be served and will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive. *Id.* at 312 (citing *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 530 (Tex.1987)).

We do not look for the subjective intent of the parties, which may be conflicting; instead, it is the objective intent, the intent expressed or apparent in the writing, that is sought. *Range Res. Corp. v. Bradshaw,* 266 S.W.3d 490, 493 (Tex.App.-Fort Worth 2008, pet. denied) (op. on reh'g). Even if different parts of the deed appear contradictory or inconsistent, the court must strive to construe the instrument to give effect to all of its provisions. *Luckel,* 819 S.W.2d at 462. Each word and phrase should be given its plain, grammatical meaning unless doing so would clearly defeat the parties' intent. *Moon Royalty, LLC v. Boldrick Partners,* 244 S.W.3d 391, 394 (Tex.App.-Eastland 2007, no pet.). The usual labels given the clauses, such as granting, warranty, habendum, and future lease, are not controlling. *Luckel,* 819 S.W.2d at 463.

## CONSTRUCTION OF 1961 ROYALTY RESERVATION

In her first issue, Coghill asserts that the trial court erred in granting summary judgment in favor of the Griffiths. In her second issue, she challenges the trial court's construction of the royalty reservation in the 1961 deed. Because these issues both turn on whether the royalty reservation constitutes a fraction of royalty (Coghill's position) or a fractional royal-

ty (the Griffiths' position), we will address them together.

### Definitions

■■ A fraction of royalty conveys a fractional share of the royalty that is contained in an oil and gas lease—it is not fixed, but rather floats in accordance with the size of the landowner's royalty contained in the lease. *Range Res. Corp.*, 266 S.W.3d at 493. The amount to be paid to the owner is determinable upon the execution of some future lease and is calculated by multiplying the fraction in the royalty reservation by the royalty provided in the lease. *Id.*

■ A fractional royalty interest entitles the owner to the specified fractional amount stated in the deed of oil, gas, or other minerals and remains constant regardless of the amount of royalty contained in a subsequently negotiated oil and gas lease. *Id.*

### The Royalty Reservation

The subject to clause of the 1961 deed states that the conveyance is made subject to an existing oil, gas, and mineral lease. The record reveals that this lease provided for a one-eighth royalty.

The reservation portion of the deed includes five clauses relating to the interest reserved by the grantor. The first of these clauses reserves to the grantor an undivided one-eighth (1/8) interest in and to all of the oil royalty [and gas royalty]. This clause describes the interest as a fraction of royalty as defined above. *See Schlittler v. Smith,* 128 Tex. 628, 101 S.W.2d 543, 544–45 (1937) (construing a similar provision as a fraction of such royalty as may be reserved in any oil, gas, or mineral lease). The second provision (the

existing lease clause) states that the grantor reserves an undivided one-eighth (1/8) of all royalties payable under the terms of [the existing] lease. This clause also states the reservation as a fraction of royalty as defined above.

■ The third clause pertains to future leases, and describes the reservation as an undivided one-eighth (1/8) of the usual one-eighth (1/8) royalties provided for in any future oil, gas and/or mineral lease. The fourth clause (the minimum royalty clause) also relates to future leases. This clause requires that future leases or contracts for the development of oil, gas, or other minerals provide for at least a royalty ... of the usual one-eighth (1/8) to be delivered free of cost. The fifth clause (the fee owner development clause) relates to future mineral development as well, but only if the development is by one or more mineral fee owners. In that event, the grantee shall own and be entitled to receive as a free royalty ... [a]n undivided one-sixty fourth (1/64) [or one-eighth of one-eighth] of all [oil and gas produced].[1]

### Harmonizing the Clauses

■ In harmonizing the above clauses, we apply the method of construction employed by our supreme court in construing a 1935 mineral deed. *See Luckel,* 819 S.W.2d at 461–65. There, the future lease clause provided that the grantee shall be entitled to one-fourth of any and all royalties reserved under said leases. *Id.* at 461. At the time the deed was executed, the interest conveyed was subject to an oil, gas, and mineral lease providing for the usual one-eighth royalty. *Id.* In the granting clause, the deed specifically conveyed a

---

1. The term "free royalty" refers to a mineral interest that is not expense bearing. *Smith v. Graham,* 705 S.W.2d 705, 707 (Tex.App.-Tex-arkana 1985, writ ref'd n.r.e.); *Miller v. Speed,* 259 S.W.2d 235, 239 (Tex.Civ.App.-Eastland 1952, no writ).

one thirty-second royalty to the grantee. *Id.*

After the lease in effect in 1935 expired, several new leases were executed. *Id.* Each of these leases provided for a one-sixth royalty. *Id.* The grantee's successors contended they were entitled to one-fourth of the one-sixth royalty (a fraction of royalty) under the new leases, while the grantor's successors countered that the grantee's successors were limited to a fixed one thirty-second royalty (a fractional royalty). *Id.*

The supreme court harmonized these seemingly disparate clauses by looking at the four corners of the deed. *Id.* The court stated that it [did] not quarrel with the assumption that the parties probably contemplated nothing other than the usual one-eighth royalty. *Id.* at 462. But the court stated further that [this] assumption does not lead to the conclusion that the parties intended only a fixed 1/32 interest. *Id.* Accordingly, the court concluded that the future lease clause was effective to convey a one-fourth interest in all royalties as to future leases. *Id.* at 464. In harmonizing the granting clause reference to a one thirty-second royalty interest, the court noted that the one thirty-second royalty interest was one-fourth of the usual one-eighth royalty (the royalty in the existing lease). *Id.* Thus, the court construed the fraction as an expression of the parties' intent that the undivided one-fourth royalty never should fall below one-fourth of the usual one-eighth (an undivided one thirty-second). *Id.* at 464–65.

Applying the harmonization principles in *Luckel,* we construe the granting clause in the 1961 deed as effective to reserve an undivided one-eighth interest in the royalty in all future leases, including the 1976 and 1981 leases (a fraction of royalty). To harmonize the remaining clauses, we first recognize that the parties' references, whether express or implied, to the usual one-eighth royalty do not lead to the conclusion that they intended to limit the grantor's reservation to a fixed one sixty-fourth royalty interest in future leases. *See Luckel,* 819 S.W.2d at 462. We then note that any future lease must provide for at least a one-eighth royalty. This expresses the parties' intent to set a floor guaranteeing that the reserved royalty (a fraction of royalty) would never be less than one sixty-fourth (one-eighth of one-eighth). *See id.* The future lease clause states the reservation in terms of this floor (one-eighth of the usual one-eighth, which equals one sixty-fourth), as does the fee owner development clause (one sixty-fourth, which equals one-eighth of one-eighth). But these references do not limit the reserved royalty to a one sixty-fourth fractional royalty.

Two of our sister courts of appeals have addressed the effect of language prescribing a minimum royalty. The San Antonio Court of Appeals stated that when language in a deed restricts the ability of the grantor to enter into a future lease providing for less than a one-eighth royalty, this language contemplates the possibility of a future lease containing a larger royalty. *Garza v. Prolithic Energy Co., L.P.,* 195 S.W.3d 137, 146 (Tex.App.-San Antonio 2006, pet. denied). In *Garza,* the 1938 deed stated that any lease or contract for the development of minerals shall provide for at least royalty of the usual one-eighth *Id.* at 140. Because of this provision, the court concluded that if the grantor entered into a future lease with a royalty larger than the usual one-eighth, the grantee would be entitled to benefit from the larger royalty interest. *Id.* at 146. The minimum royalty provision in *Garza* is similar to the at least language used in the 1961 deed reservation in the instant case.

The Fort Worth Court of Appeals has also determined the effect of a similar clause in a 1960 deed's royalty reservation. *Range Res. Corp.*, 266 S.W.3d at 493. That clause stated that the reservation of an undivided one-half royalty was equal to not less than an undivided one-sixteenth (1/16) portion of all of the oil, gas, and other minerals in, to and under or that may be produced. That language, as in the deed before us, sets a floor that the lease royalty (a fractional royalty) would not fall below. *See id.* at 496 (language expresses intent to establish interest of a minimum one-sixteenth royalty, rather than a fixed one-sixteenth fractional royalty). The language used in *Range Resources Corp.* and in the instant case establishes that the interest reserved was a fraction of royalty and not a fractional royalty. *See id.*

In summary, we have construed the royalty reservation in the 1961 deed according to the four corners rule. From our harmonization of its provisions, we have determined that when and if the property was leased after 1961, the reserved interest (one-eighth of royalty) was to be based upon the new royalty fraction, even if the fraction was larger than one-eighth. Our construction of these provisions is also bolstered by the fact that Welch, who was the grantee in the 1961 deed, signed the 1981 division order that stated he and Coghill would receive equal royalty payments.

Accordingly, we hold that the 1961 deed reserved to the grantor a fraction of royalty in all future mineral leases, including the 1976 and 1981 leases. Therefore, the trial court erred in granting the Griffiths' motion for summary judgment and denying Coghill's motion for summary judgment. Coghill's issues one and two are sustained.

## ATTORNEY'S FEES

 In her third issue, Coghill requests that we remand the issue of attorney's fees for the trial court to determine whether it should award her reasonable and necessary attorney's fees. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (West 2008). The Uniform Declaratory Judgments Act allows a trial court to award reasonable and necessary attorney's fees as are equitable and just. *Id.* To grant or deny attorney's fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused that discretion. *Oake v. Collin Cnty.*, 692 S.W.2d 454, 455 (Tex. 1985). In the exercise of its discretion, the trial court may decline to award attorney's fees to either party. *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 324 (Tex. App.-Dallas 2004, no pet.). A prevailing party in a declaratory judgment action is not entitled to attorney's fees simply as a matter of law; entitlement depends on what is equitable and just, and the trial court's power is, in that respect, discretionary. *Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist.*, 198 S.W.3d 300, 319 (Tex.App.-Texarkana 2006, pet. denied).

In the instant case, the trial court did not award attorney's fees to either the Griffiths or Coghill. A trial court does not abuse its discretion merely because it concludes that each party should bear its own attorney's fees. *Univ. of Tex. Health Sci. Ctr. v. Mata & Bordini, Inc.*, 2 S.W.3d 312, 319 (Tex.App.-San Antonio 1999, pet. denied). In essence, Coghill asserts that a remand is warranted because she has prevailed on appeal. However, a prevailing party is not entitled to attorney's fees simply as a matter of law. *Save Our Springs Alliance, Inc.*, 198 S.W.3d at 319.

When we reverse a declaratory judgment after the trial court awarded attorney's fees to the party who prevailed at trial, we may remand for reconsideration of attorney's fees in light of our disposition on appeal. *Advanced Polymer*, 128 S.W.3d at 324. This is because the award of attorney's fees may no longer be equitable and just after reversal. *Id.* That did not occur here, and Coghill's request for remand is based solely on her prevailing party status. We are not persuaded that a remand is warranted. Accordingly, we overrule Coghill's third issue.

### DISPOSITION

Because we have sustained Coghill's issues one and two, we *reverse* the judgment of the trial court and *render* judgment for Coghill that she owns a one-eighth royalty interest as a fraction of royalty, currently one-eighth of a three-sixteenths royalty, in the 191.12 acres in Rusk County, described in Volume 735, Page 93 of the Rusk County Deed Records.