

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00755-CV

Roger L. **GRAHAM**, John B. Graham, John Regmund, Glenn Regmund, Wilma Regmund, Raellen Regmund Mattingly, Rayanne Regmund Chesser, Albert O. Menn, and Irene C. Menn, Appellants

v.

George J. **PROCHASKA**, Jr., Patricia Prochaska Holland, Jeanette Prochaska Mazza, Dawn Prochaska Snyder, Frederick James Prochaska, II, and Rebecca Prochaska Willis, Appellees

From the 81st Judicial District Court, Karnes County, Texas
Trial Court No. 12-02-00023-CVK
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice
Dissenting Opinion by:  Marialyn Barnard, Justice (to follow)

Sitting:       Sandee Bryan Marion, Justice
               Marialyn Barnard, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  December 31, 2013

AFFIRMED

In this appeal, we must construe a 1950 warranty deed to determine the nature and size of the royalty interest retained by the grantors. The trial court rendered summary judgment in favor of the Prochaskas, who are the appellees and heirs of the grantors, and ruled they own a "floating" one-half royalty interest. The Regmunds, who are the appellants and heirs of the grantees, contend the trial court misconstrued the warranty deed and ask us to reverse and render judgment that the Prochaskas are entitled to a "fixed" one-sixteenth royalty interest. We affirm.

## BACKGROUND

*The Warranty Deed*

In 1950, George and Elsie Ann Prochaska conveyed a tract of land in Karnes County, Texas, to John and Frances Regmund. The granting clause conveyed "all that certain tract or parcel of land." But the Prochaskas reserved[1] a royalty interest that is the center of this dispute:

> SAVE AND EXCEPT, however, there is reserved unto George Prochaska, his heirs and assigns, one-half (1/2) of the one-eighth (1/8) royalty to be provided in any and all leases for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof, same being equal to one-sixteenth (1/16th) of all oil, gas and other minerals of any nature, free and clear of all costs of production, except taxes;

> \*\*\*[2]

> AND PROVIDED this reservation is burdened with paying the two outstanding mineral royalty reservations, each of One-Fourth (1/4) of one-eighth (1/8) royalty, one of which reservations is described in the deed from John Hancock Mutual Life Insurance Company to E.S. Joslin, now of record in Vol. 141, page 161, Deed Records of Karnes County, Texas, and the other reservation is described in the deed from E.S. Joslin, et ux to A.W. Powell, Jr., et al now of record in Vol. 165, page 80 of the Deed Records of Karnes County, Texas; And this reservation shall only be effective to the extent that one or both of said outstanding reservations become terminated.

> It being the intent of the parties hereto that John W. Regmund and wife, Frances E. Regmund, as of the effective date hereof, shall be vested with and entitled to one-half (1/2) of the usual one-eighth (1/8) royalty in and to all oil, gas and other minerals in on and/or under the property herein conveyed, and the reservation herein above recited in favor of the grantor herein, shall relate to and cover only the one-half (1/2) of one-eighth (1/8) royalty interest previously reserved in favor of John Hancock Mutual Life Insurance Company and Ennis Joslin, if, as and when said interest in favor of said parties terminate.

---

[1] For ease of reference, we will refer to the Prochaskas' royalty interest as a "reservation," although the parties differ on whether the interest was "reserved" or "excepted." Our discussion will explain why the difference is immaterial to the resolution of this case.

[2] The omitted clause limits the nature of reservation to a nonparticipating royalty interest and does not aid our determination of the nature or size of the royalty reserved.

The "save and except" clause excludes a royalty interest from passing under the deed. The "provided" clause identifies previously reserved "mineral royalty" interests, with which the Prochaskas' royalty interest is "burdened." The deeds creating those interests were offered as summary judgment evidence. The "intent" clause clarifies the relationship between the Prochaskas' reserved interest, the Regmunds' received interest, and the previously reserved interests identified in the "provided" clause.

*The Present Controversy*

The original mineral leases providing a one-eighth landowner's royalty in effect at the time of the 1950 conveyance have expired. The Regmunds have executed new leases that provide a one-fifth landowner's royalty, and they filed the underlying lawsuit seeking a declaratory judgment that the Prochaskas reserved a "fixed" one-sixteenth royalty interest from the 1950 deed. According to the Regmunds, the Prochaskas' allegedly fixed royalty interest limits them to receiving one-sixteenth of production, regardless of the landowner's royalty set by the newly executed mineral leases. The fixed one-sixteenth royalty would be deducted from the Regmunds' one-fifth landowner's royalty. Under the Regmunds' interpretation, the Prochaskas would receive one-sixteenth of production and the Regmunds would keep the remaining eleven-eightieths of production from the landowner's royalty ($1/5 - 1/16 = 11/80$).

The Prochaskas counterclaimed for declaratory relief, contending they were entitled to a "floating" one-half royalty interest. Under their interpretation, they should receive one-half of whatever royalty the Regmunds have secured on the conveyed lands, now and in the future. Accordingly, the Prochaskas contend they should currently receive one-tenth of production, which is one-half of the landowner's royalty, and the Regmunds would take the remaining one-tenth of production ($1/5 \times 1/2 = 1/10$).

The trial court held a hearing on the parties' competing motions for summary judgment. The court rendered judgment for the Prochaskas, construing the deed to reserve a floating one-half royalty interest in the current, and any future, mineral leases.

## STANDARD OF REVIEW

We review a trial court's ruling on motions for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). If competing motions for summary judgment were filed, with one being granted and the other denied, we review all the issues presented and render the judgment the trial court should have rendered. *Id*. To determine whether the prevailing party below was entitled to summary judgment, we view the evidence in the light most favorable to the party against whom summary judgment was rendered. *Id.*

## DEED CONSTRUCTION

*Rules of Construction*

The parties contend the deed is unambiguous, although they offer competing constructions of the reserved royalty interest. The construction of an unambiguous deed is a question of law for the court to decide de novo. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). When construing an unambiguous deed, the court ascertains the intent of the parties from the "four corners" of the deed. *Id.* Under circumstances such as those presented by this case, the court may consider other instruments that are incorporated by reference into the deed. *See Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 676 (Tex. 1956) (holding the "subject to" clause in a deed incorporated mineral leases to define the estate conveyed, and the nature, extent and character of such estate); *Petty v. Winn Exploration Co., Inc.*, 816 S.W.2d 432, 434 (Tex. App.—San Antonio 1991, writ denied); *see also Johnson v. Fox*, 683 S.W.2d 214, 216 (Tex. App.—Fort Worth 1985, no writ) ("[C]ourts can construe an instrument containing a reservation or exception together with other instruments

to which it refers.") (citing *Williams v. J. & C. Royalty Co.*, 254 S.W.2d 178 (Tex. Civ. App.— San Antonio 1952, writ ref'd)).

We harmonize all parts of the deed, understanding that the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. *Luckel*, 819 S.W.2d at 462. If different parts of the deed appear contradictory or inconsistent, we strive to harmonize all of the parts and construe the instrument to give effect to all of its provisions. *Id.* The deed's terms are given their plain, ordinary, and generally accepted meanings unless the deed itself shows them to be used in a technical or different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). We determine the parties' intent from the whole document, "not by the presence or absence of a certain provision." *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*, 966 S.W.2d 451, 457 (Tex. 1998). Arbitrary rules of construction should not be applied absent some ambiguity or irreconcilable conflict that cannot be resolved through harmonization. *See Luckel*, 819 S.W.2d at 462; *Hancock v. Butler*, 21 Tex. 804, 816 (1858); *Stewman Ranch, Inc. v. Double M. Ranch, Ltd.*, 192 S.W.3d 808, 811 (Tex. App.—Eastland 2006, pet. denied); *see also* Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds & Leases: An Encyclopedia of Canons of Construction*, 24 TEX. TECH. L. REV. 1, 72 (1993) ("[A]s a general matter, courts take the position that they should initially attempt to harmonize the deed language within the four corners of the instrument. Only upon their inability to harmonize within the four corners, should the courts resort to anti-harmonizing canons.").

*Reservations and Exceptions*

"[A] warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed." *Cockrell*, 299 S.W.2d at 675. Property "excepted" or "reserved" under a deed is "never included in the grant" and is "something to be deducted from the thing granted, narrowing and limiting what

would otherwise pass by the general words of the grant." *King v. First Nat'l Bank of Wichita Falls*, 192 S.W.2d 260, 262 (Tex. 1946). Reservations must be made by "clear language," and courts do not favor reservations by implication. *Monroe v. Scott*, 707 S.W.2d 132, 133 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.). Exceptions "must identify, with reasonable certainty, the property to be excepted from the larger conveyance." *Angell v. Bailey*, 225 S.W.3d 834, 840 (Tex. App.— El Paso 2007, no pet.).

## MINERAL ESTATES & ROYALTY INTERESTS

*Mineral Estates & Leases Generally*

Landowners generally own the right to exploit the minerals under their land, or "the mineral estate." *See Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 15 (Tex. 2008); *French v. Chevron U.S.A., Inc.*, 896 S.W.2d 795, 797 (Tex. 1995). The mineral estate encompasses five rights and attributes, including the right to receive royalties.[3] *French*, 896 S.W.2d at 797. Landowners "lease" their minerals to an operator for development, but the typical mineral lease actually conveys the mineral estate as a determinable fee estate. *Luckel*, 819 S.W.2d at 464. As the holder of a determinable fee interest, the "lessee-operator" has the present possessory interest in the mineral estate. Accordingly, the "lessor-landowner" is left with a future interest, the possibility of reverter, in the mineral estate. *Id.*

The owner of a present or future interest in the mineral estate may convey or reserve his mineral interest. *Id.* The grantor does not need to part with all the attributes of the mineral estate; "individual [attributes] can be held back, or reserved in the grantor." *French*, 896 S.W.2d at 797. A grantor may also convey a fractional interest in the mineral estate. The owner of a fractional mineral interest is generally entitled to a proportional amount of the bonuses, rental, and royalties

---

[3] The other four are the right to develop the mineral estate; the right to lease the mineral estate; the right to receive bonus payments; and the right to receive delay rentals. *French*, 896 S.W.2d at 797.

to be received under a lease. *Gibson v. Turner*, 294 S.W.2d 781, 786 (Tex. 1956). Parties to a deed may, however, agree to limit or expand the royalty interest to be greater or less than the fractional mineral interest conveyed or reserved. *Patrick v. Barrett*, 734 S.W.2d 646, 648 (Tex. 1987); *but see Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 511–12 (Tex. App.—Fort Worth 2011, pet. denied) (holding a deed reserving a one-half mineral interest, but describing the reserved royalty as "one half of the usual one-eighth," did not limit the grantor's proportional, floating royalty interest).

*Royalty Interests*

A royalty interest is defined under well-established oil and gas law as the right to receive a share of gross production of the minerals produced under a mineral lease, free of the costs of production. *Delta Drilling Co. v. Simmons*, 338 S.W.2d 143, 147 (Tex. 1960). The basic royalty interest, or "landowner's royalty," is the fraction of production, free of the costs of production, which a landowner-lessor is entitled to receive from the operator-lessee under the terms of his lease. *See Heritage Res.*, 939 S.W.2d at 121–22. The right to receive royalty payments, as one of the rights and attributes comprising the mineral estate, is an intangible and separately alienable property interest. *Luckel*, 819 S.W.2d at 464.

A mineral-interest owner may create, by conveyance, reservation, or exception, a royalty interest out of either the total production achieved under a lease or from the landowner's royalty. *See id.* at 463–64. Generally, such a diminished royalty interest is termed a "nonparticipating" royalty interest because the holder only has the right to a share of production. *Hamilton v. Morris Res., Ltd.*, 225 S.W.3d 336, 344 (Tex. App.—San Antonio 2007, pet. denied). These royalty interests may, like interests in the mineral estate, be conveyed or reserved as determinable fee interests and, therefore, be separated into present and future interests. *See Luckel*, 819 S.W.2d at

464; *see, e.g., Bagby v. Bredthauer*, 627 S.W.2d 190, 193–95 (Tex. App.—Austin 1981, no writ) (grantors reserved the possibility of reverter in a determinable royalty interest).

In the 1920s and 1930s, the landowner's royalty became standardized at one-eighth of production. *Concord Oil*, 966 S.W.2d at 459; *Luckel*, 819 S.W.2d at 462; 1 ERNEST E. SMITH & JACQUELINE LANG WEAVER, TEXAS LAW OF OIL & GAS § 2.4[B][1], at 2-64 (LexisNexis Matthew Bender, 2nd ed. 2013). Leases containing royalties larger than one-eighth became increasingly common in the mid-1970s. 1 SMITH & WEAVER, TEXAS LAW OF OIL & GAS § 2.4[B][1], at 2-64. The ubiquity of leases providing for a one-eighth landowner's royalty led the Texas Supreme Court to take judicial notice that "the usual royalty provided in mineral leases is one-eighth." *Garrett v. Dils Co.*, 299 S.W.2d 904, 907 (Tex. 1957); *see also State Nat. Bank of Corpus Christi v. Morgan*, 143 S.W.2d 757, 761 (Tex. 1940) ("The fact stated in the foregoing quotation, that the usual royalty in oil and gas leases is 1/8, is in our opinion one so generally known that judicial knowledge may be taken of it."). The historical standardization of the landowner's royalty at one-eighth of production has sometimes created confusion in the construction of deeds from that period, where the use of conflicting fractions suggests the parties mistakenly assumed the landowner's royalty would always be one-eighth. *See Garrett*, 299 S.W.2d at 907; *Luckel*, 819 S.W.2d at 462; *see generally* 1 SMITH & WEAVER, TEXAS LAW OF OIL & GAS § 3.7[A] (describing the problems in deed construction likely caused by such a mistaken assumption). The theory that parties from that period mistakenly assumed and conceptualized the landowner's royalty as set at one-eighth of production is the "estate-misconception" theory. *See Concord Oil*, 966 S.W.2d at 460 (acknowledging the estate-misconception theory and stating an understanding of the theory is helpful and instructive, although not dispositive, in the construction of deeds).

*How Is the Nature and Size of a Royalty Interest Determined?*

There are two kinds of nonparticipating royalty interests. *See Luckel*, 819 S.W.2d at 464. A "fixed" or "fractional" royalty interest entitles the owner to an absolute fraction of production—it is not affected by the amount of the landowner's royalty. *Id.*; *Sundance Minerals*, 354 S.W.3d at 511–12; *see, e.g., Watkins v. Slaughter*, 189 S.W.2d 699, 699–700 (Tex. 1945) (holding a reservation of "a 1/16 interest in and to all of the oil, gas and other minerals" describes a fixed royalty interest). In contrast, a "fraction-of" or "floating" royalty interest entitles its owner to a share of the landowner's royalty obtained under a lease. *See Luckel*, 819 S.W.2d at 464; *Sundance Minerals*, 354 S.W.3d at 512; *see, e.g., Schlitter v. Smith*, 101 S.W.2d 543, 544–45 (Tex. 1937) (holding a reservation of "an undivided one-half interest in and to the royalty rights on all of oil and gas and other minerals" described a floating royalty interest). Thus, the value of the royalty interest "floats" in accordance with the size of the landowner's royalty.[4] *Sundance Minerals*, 354 S.W.3d at 512. The fundamental distinction between the two kinds of nonparticipating royalty interests is the source of the royalty payments: fixed royalty interests are an unchanging fraction of total production obtained under a mineral lease, but floating royalty interests come out of the landowner's royalty and vary in accordance with that fraction of production. *See Luckel*, 819 S.W.2d at 464; *Sundance Minerals*, 354 S.W.3d at 512; 1 SMITH & WEAVER, TEXAS LAW OF OIL & GAS § 2.4[B][2], at 2-64; 2 HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL & GAS LAW § 327.2, at 87–88 (LexisNexis 2012).

Each of the two types of nonparticipating royalty interests may be created by a variety of language. *Compare* 2 WILLIAMS AND MEYERS, OIL & GAS LAW § 327.1, at 81–82 (six examples

---

[4] We use the more recent terms "fixed" (in place of "fractional") and "floating" (in place of "fraction of") when discussing the two kinds of royalty interests because they vividly describe the differing natures of the two types of royalty interests.

of language creating fixed royalty interests), *with id.* § 327.2, at 83–84 (six examples of language creating floating royalty interests). Problems of construction arise when deeds create royalty interests described as "a fraction of one-eighth royalty" or "a fraction of the usual one-eighth royalty." Depending on the context of the description, Texas courts have construed the same language in different deeds in different ways. *Compare Pickens v. Hope*, 764 S.W.2d 256, 258–59, 267 (Tex. App.—San Antonio 1988, writ denied) (holding "an undivided 1/4 of the usual 1/8 royalty" reserved a fixed one thirty-second royalty), *with Sundance Minerals*, 354 S.W.3d at 512 (holding a deed reserving a one-half mineral interest, but describing the reserved royalty as "one half of the usual one-eighth," did not limit the grantor's proportional, floating royalty interest).

When a deed contains a reservation of "a fraction of one-eighth," "a fraction of one-eighth royalty," "a fraction of the one-eighth royalty," or "a fraction of the usual one-eighth royalty," a party may argue that "one-eighth" should be understood as a stand-in for the landowner's royalty and therefore convey or reserve unto them a floating royalty interest. *E.g.*, *Hudspeth v. Berry*, No. 02-09-225-CV, 2010 WL 2813408, at *3 (Tex. App.—Fort Worth July 15, 2010, no pet.) (mem. op.). Arguments for construing such language as conveying or reserving fixed royalties are based on the estate-misconception theory. *See generally* 1 SMITH & WEAVER, TEXAS LAW OF OIL & GAS § 3.7[A]. But courts generally construe simple grants or reservations of "a fraction of one-eighth" or its variations as creating a fixed royalty interest, the size of which is determined by multiplying the two fractions together. *See Pickens*, 764 S.W.2d at 258–59, 267; *Hawkins v. Tex. Oil & Gas Corp.*, 724 S.W.2d 878, 889 (Tex. App.—Waco 1987, writ ref'd n.r.e) (holding grant of "1/4 of the 1/8 royalty interest" conveyed a fixed one thirty-second royalty interest); *Helms v. Guthrie*, 573 S.W.2d 855, 857 (Tex. Civ. App.—Fort Worth 1978, writ ref'd n.r.e.) (holding reservation of "1/2 of the 1/8Th royalty (same being a 1/16Th of the total production)" described a fixed royalty). This accords with the literal, mathematical meaning of a "fraction of a fraction." *See Heritage*

*Res.*, 939 S.W.2d at 121 ("plain language" rule). Sometimes, however, the context of the entire deed leads courts to harmonize variations of a "fraction of one-eighth" in favor of finding a floating royalty. *See Coghill v. Griffith*, 358 S.W.3d 834, 837–40 (Tex. App.—Tyler 2012, pet. denied) (holding reservation of "an undivided one-eighth (1/8) of the usual one-eighth (1/8) royalties provided for in any future oil, gas and/or mineral leases" described a floating one-eighth royalty); *Sundance Minerals*, 354 S.W.3d at 512 (holding a deed reserving a one-half mineral interest, but describing the reserved royalty as "one half of the usual one-eighth," did not limit the grantor's proportional, floating royalty interest).

## DISCUSSION

### *The "save and except" clause*

The "save and except" clause of the 1950 deed describes the Prochaskas' reserved royalty interest in two different ways. The first phrase reserves "one-half (1/2) of the one-eighth (1/8) royalty to be provided in any and all leases for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof." The second phrase continues "same being equal to one-sixteenth (1/16th) of all oil, gas and other minerals of any nature, free and clear of all costs of production, except taxes." We must, if possible, harmonize these phrases considering the reservation as a whole.[5] *Concord Oil*, 966 S.W.2d at 457; *Luckel*, 819 S.W.2d at 462.

The parties' major dispute is over what kind of royalty interest is described by the first phrase of the "save and except" clause. The Regmunds argue that the language "one-half (1/2) of

---

[5] The Regmunds argue that according to *Hudspeth* no harmonization is required because there are no conflicting fractions, and they urge us to resolve any apparent contradictions or inconsistencies in the deed by applying two secondary canons of construction: the canon construing the conveyance of the greatest estate possible and the canon construing ambiguities against the grantor. First, to the extent that *Hudspeth* may suggest harmonization is only required where there are conflicting fractions, we disagree and decline to follow that reasoning. Second, we question whether the cited canons can fruitfully be applied to deciding whether a royalty interest is fixed or floating. The former is absolute, but the latter is contingent on the amount of the landowner's royalty. Regardless, we must first attempt to harmonize the four corners of the deed, and we can do so without these canons. *See Luckel*, 819 S.W.2d at 461–62; *Stewman Ranch*, 192 S.W.3d at 811.

the one-eighth (1/8) royalty" should be construed as reserving a fixed royalty interest. The Prochaskas counter that a floating interest was created because they reserved one-half of "the one-eighth (1/8) royalty to be provided in any and all leases . . . now upon or hereafter given on said land."

We agree with the Prochaskas that "one-eighth royalty" must be read with the surrounding descriptive language. "One-eighth royalty" is modified by "the . . . to be provided in any and all leases for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof." The use of the word "the" denotes that "the one-eighth royalty" is a distinct or particular royalty. *See* 2 SHORTER OXFORD ENGLISH DICTIONARY 3228, at 2 (6th ed. 2007) (defining "the" as "[d]esignating one or more persons or things particularized by . . . a phr[ase] introduced by a preposition or inf[initive] . . ."); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1221, at 2 b (1) (10th ed. 1999) ("The" is "used as a function word before a noun to limit its application to that specified by a succeeding element in the sentence."). The succeeding phrase, "to be provided in any and all leases for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof," further distinguishes and particularizes "the one-eighth royalty." *See* 2 SHORTER OXFORD ENGLISH DICTIONARY 3228, at 2; MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1221, at 2 b (1).

Setting aside "one-eighth" for a moment, we note that the reservation of "one-half of the royalty to be provided in any and all leases" reserves a floating royalty. The objective intent of that language would be to reserve a portion of the landowner's royalty—i.e., the royalty provided in *leases*, not an absolute fraction of production. *See Luckel*, 819 S.W.2d at 463 (holding "[t]he language 'one-fourth of any and all royalties reserved under' future leases is clear and unambiguous" to describe a floating royalty); *cf. Schlittler*, 101 S.W.2d at 545 (holding a reservation of "an undivided one-half interest in and to the royalty rights on all of oil and gas and

other minerals" described a floating royalty interest). Furthermore, the language "in any and all leases . . . *now upon or hereafter given*" objectively shows the floating interest would apply to both existing and future leases (emphasis added). *See Coghill*, 358 S.W.3d at 839 (holding reservation of "royalties payable under the terms of said lease, as well as . . . royalties provided for in any future oil, gas and/or mineral lease covering said lands or any part thereof" applied to then-current and future leases).

Of course, we may not simply disregard the modifier "one-eighth." We decline, however, to construe "one-eighth" in the description of the landowner's royalty as a limitation of the Prochaskas' interest to a fixed royalty. *See id.* (holding reservation of "an undivided one-eighth (1/8) of the usual one-eighth (1/8) royalties provided for in any future oil, gas and/or mineral leases" described a floating one-eighth royalty); *Sundance Minerals*, 354 S.W.3d at 512 (holding a deed reserving a one-half mineral interest, but describing the reserved royalty as "one half of the usual one-eighth," did not limit the grantor's proportional, floating royalty interest). Instead, its presence reflects the common misconception of that period that the landowner's royalty would always be one-eighth of production obtained under a lease. *Concord Oil*, 966 S.W.2d at 460; *Garrett*, 299 S.W.2d at 907; 1 SMITH & WEAVER, TEXAS LAW OF OIL & GAS § 3.7[A], at 3-47; *see Heritage Res.*, 939 S.W.2d at 121 ("We give terms their plain, ordinary, and generally accepted meaning *unless the instrument shows that the parties used them in a technical or different sense*.") (emphasis added). We note that the deed before us was executed in 1950—seven years before the Texas Supreme Court took judicial notice that "the usual royalty provided in mineral leases is one-eighth." *Garrett*, 299 S.W.2d at 907. In addition, the mineral lease that was then in effect provided a one-eighth landowner's royalty. Accordingly, we construe "one-eighth" within context of the surrounding language "the . . . royalty to be provided in any and all leases for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof" as an expression of the

parties' assumption that the landowner's royalty would always be one-eighth of production. *See id.*; *Heritage Res.*, 939 S.W.2d at 121.

The Regmunds urge this court to isolate the language "one-half (1/2) of the one-eighth (1/8) royalty" from the rest of the phrase and thereby to construe the Prochaskas' reservation as a fixed 1/16 royalty interest, directing us to cases construing variations of a "fraction of one-eighth royalty" as fixed interests. *See Hudspeth*, 2010 WL 2813408, at *4; *Helms*, 573 S.W.2d at 857; *Tiller v. Tiller*, 685 S.W.2d 456, 457–58 (Tex. App.—Austin 1985, no writ). We acknowledge that the truncated phrase "one-half of the one-eighth royalty" falls within the line of cases construing variations of a "fraction of one-eighth royalty" as fixed royalty interests. We agree the language in those cases did not sufficiently show the parties intended any technical meaning to be applied to "one-eighth royalty," nor did it justify using the surrounding circumstances to deviate from the plain, mathematical meaning. And if that were the complete and unadorned language of the reservation before us, we would likely construe that as an objective expression of a fixed royalty interest. *See Hawkins*, 724 S.W.2d at 889.

But context matters. The language of those deeds is not the language of the deed before us, and the Regmunds' construction asks us to ignore the full context of the reservation described as "one half (1/2) of *the* one-eighth (1/8) royalty *to be provided in any and all leases for oil, gas and other minerals now upon or hereafter given*" (emphasis added). As we have explained, that language objectively expresses the parties' intent to reserve one-half of the royalty to be provided in current and future leases, and also reflects the parties' assumption that the landowner's royalty would always be one-eighth, consistent with the mineral lease that was presently covering the property. Unlike cases where courts have declined to delve into the subjective meaning behind the use of "one-eighth," *see Hawkins*, 724 S.W.2d at 889 (holding grant of "1/4 of the 1/8 royalty interest" conveyed a fixed one thirty-second royalty interest), the deed before us contains

additional language that provides the context necessary to objectively determine that the parties assumed the landowner's royalty would always be one-eighth of production. The Regmunds, in arguing that the phrase describes a fixed royalty, have not offered any construction that accounts for the entire phrase. But we must construe *all* the language of the deed. *Concord Oil*, 966 S.W.2d at 457. Accordingly, we distinguish the Regmunds' cited authorities because they do not contain the same language as the 1950 deed.

Having determined that the first phrase of the "save and except" clause describes a floating royalty interest, we must attempt to harmonize it with the second, describing the reserved interest as "same being equal to one-sixteenth (1/16th) of all oil, gas and other minerals of any nature, free and clear of all costs of production, except taxes." This language, *standing alone*, would reserve a fixed royalty interest. *See Watkins*, 189 S.W.2d at 700. However, as previously explained, the prior phrase objectively shows that the parties assumed the landowner's royalty, of which the Prochaskas would take half, would always be a one-eighth royalty. In light of the first phrase, we conclude the parties naturally assumed that the value of the Prochaskas' reserved royalty interest would always be "one-sixteenth of production." Accordingly, we harmonize the second phrase as a statement of the value that the parties (mistakenly) expected the Prochaskas' floating one-half royalty reservation would always have, i.e. one-sixteenth of production.[6] The parties' assumption

---

[6] We note the Court in *Luckel* criticized the court of appeals for relying on the estate-misconception theory to arbitrarily choose which provisions of the deed before it should be given effect. 819 S.W.2d at 462. The court of appeals purportedly "harmonized" the granting clause, conveying "an undivided one thirty-second (1/32nd) royalty interest," with the future lease clause, providing the grantees would receive "one-fourth of any and all royalties reserved under [future] leases" by reasoning that "the clear and unambiguous language 'one-fourth of any and all royalties reserved under said leases' really meant a fixed 1/32nd." *Id.* at 461–62. The Court explained such reasoning could be equally well employed to show the parties intended a floating one-fourth royalty interest; and the court of appeals erred by "ignor[ing] the express language used . . . produc[ing] different assumptions about what the parties' actual intent was." *Id.* at 462. The Court ultimately held the deed conveyed two royalty interests: a fixed one thirty-second royalty interest under the then-current leases and a floating one-fourth royalty interest under future leases. *Id.* at 464. Our reasoning avoids the error criticized in *Luckel* because the presence of "one-eighth" in the description of the landowner's royalty objectively shows the parties assumed that the landowner's royalty, of which the Prochaskas reserved half, would always be one-eighth of production, and we have read the second phrase in light of their assumption.

that one-half of the landowner's royalty under future leases would always equal one-sixteenth of production does not alter our conclusion that the "save and except" clause unambiguously shows the intent to reserve one-half of the landowner's royalty "in any and all leases for oil, gas and other minerals now upon or hereafter given on said land."

### The "intent" clause

The final clause, or the "intent" clause, confirms that the parties were proceeding under the assumption that the landowner's royalty in future leases would always be one-eighth of production and underscores the importance of context in deed construction. The deed states that the parties intended the Regmunds "as of the effective date hereof, shall be vested with and entitled to one-half (1/2) of the usual one-eighth (1/8) royalty in and to all oil, gas and other minerals in on and/or under the property herein conveyed." In another case, we might construe this description of the Regmunds' royalty interest as limiting the Regmunds' interest to a fixed one-sixteenth royalty because the parties to a deed may modify the default royalty interest conveyed with a mineral interest. *See Gibson*, 294 S.W.2d at 786; *Patrick*, 734 S.W.2d at 648; *Pickens*, 764 S.W.2d at 267 (holding "an undivided 1/4 of the usual 1/8 royalty" reserved a fixed one thirty-second royalty). However, the surrounding context of the "intent" clause does not show that the parties intended to limit the royalty interest conveyed with the mineral estate. *See Sundance Minerals*, 354 S.W.3d at 512 (holding that the grantors reservation of a one-half mineral estate were entitled to a floating one-half royalty in spite of qualifying language suggesting they limited the royalty to a fixed one-sixteenth).

Instead, the context of the "intent" clause and the preceding "provided" clause shows that the Regmunds were immediately entitled to their royalty interest, as opposed to the Prochaskas' interest, which would not be effective until prior "outstanding mineral royalty" interests terminated. The "provided" clause describes "this reservation"—the Prochaskas' royalty

interest—as "burdened with paying the two outstanding mineral royalty reservations." The phrase "mineral royalty reservation" is not a legal term of art, although the reservations are described as being "each of One-fourth of one-eighth (1/8) royalty." The clause goes on to say "this reservation"—the Prochaskas' royalty interest—is only "effective to the extent that one or both of said outstanding reservations become terminated." In a similar vein, the "intent" clause states that "the reservation herein above recited in favor of the grantor herein"—the Prochaskas' royalty interest—"shall relate to and cover only the one-half (1/2) of one-eighth (1/8) royalty interest previously reserved in favor of John Hancock Mutual Life Insurance Company and Ennis Joslin, if, as and when said interest in favor of said parties terminate." Given that the Prochaskas' reservation is ineffective until the prior reservations terminate, we conclude the parties intended the Prochaskas' royalty interest to be a future interest, not a present or immediately effective one. *See Bagby*, 627 S.W.2d at 193–95. Thus, the "provided" clause and the "intent" clause work together to establish that the Regmunds' are immediately entitled to the other half of the landowner's royalty not reserved by the Prochaskas.

### The "provided" clause

The language in the "provided" clause describing the outstanding mineral royalty reservations is potentially inconsistent with the construction that the Prochaskas reserved a floating royalty interest. The "provided" clause describes the "outstanding mineral royalty reservations" as "each of One-fourth of one-eighth (1/8) royalty" and the "intent clause" describes them as "the one-half (1/2) of one-eighth (1/8) royalty interest previously reserved." If by "outstanding mineral royalty reservations" the parties meant "royalty interests," these would be fixed royalty interests, and it would be difficult to conclude the Prochaskas' reservation of those interests could transform them into floating interests.

However, the Prochaska–Regmund deed specifically refers to and identifies the deeds creating the interests with which the Prochaskas' reservation is "burdened" and to which it "covers and relates." Thus, the deeds were incorporated into the Prochaska–Regmund deed. *See Cockrell*, 299 S.W.2d at 675 (holding the "subject to" clause in a deed incorporated mineral leases to define the estate conveyed, and the nature, extent and character of such estate); *Petty*, 816 S.W.2d at 439; *see also Scheller v. Groesbeck*, 231 S.W. 1092, 1093 (Tex. Comm'n App. 1921, judgm't adopted) (stating "that all instruments in a chain of title when referred to in a deed will be read into it . . . [is] so familiar that citation of authorities is unnecessary"); *CenterPoint Energy Houston Elec., L.L.P. v. Old TCJ Co.*, 177 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (same). In addition, we may "construe an instrument containing a reservation or exception together with other instruments to which it refers." *Johnson*, 683 S.W.2d at 216 (construing unambiguous reservation before it with a prior reservation referenced by the reservation before it) (citing *Williams*, 254 S.W.2d at 178 (analyzing whether a deed reserved a mineral or royalty interest, in part, by considering the language of a mineral lease referred to in the deed)). Therefore, we conclude the Prochaska–Regmund deed, by specifically referencing and identifying the prior deeds, incorporates their description of those interests into itself, like the "subject to" clause in *Cockrell* and the reservation in *Johnson*.[7] *See Cockrell*, 299 S.W.2d at 675; *Johnson*, 683 S.W.2d at 216.

---

[7] We do not consider this court's decision in *Hausser v. Cuellar* to foreclose our consideration of the incorporated deeds. 345 S.W.3d 462 (Tex. App.—San Antonio 2011, pet. denied) (en banc). In *Hausser*, this en banc court disapproved an earlier panel opinion because "[r]ather than construing the four corners of the deed to harmonize and give effect to all its provisions . . . [the panel] relied on a prior deed to provide the interpretation." 345 S.W.3d at 470 (disapproving the analysis in *Neel v. Killam Oil Co., Ltd.*, 88 S.W.3d 334 (Tex. App.—San Antonio 2002, pet. denied)). The *Hausser* court pointed out that the earlier opinion's "analysis began with a discussion of the conveyance that preceded the [deed being construed]." *Id.* The court looked to the prior deed to determine the amount of the royalty interest received by the grantor of the deed before it, and construed the deed before it from the assumption that the grantor only intended to convey that which he had received. *Id.* The *Hausser* court's disapproval was directed at the previous court's reliance on an earlier deed to provide the construction of the nature and size of the interest conveyed in the deed before it. *See id.*

The prior deeds clarify that each "outstanding mineral royalty reservation" contains a determinable one-quarter floating royalty interest. The earlier deeds state that the grantors reserved "an undivided one-fourth (1/4) interest in and to all minerals of every character and kind." The deeds then stripped those mineral interests of the rights to receive bonuses and delay rentals, and the grantors were not required to join in or ratify mineral leases made by the grantees. Thus, the prior grantors reserved only the right to receive an amount of royalties consistent with a fractional mineral interest, i.e., one-quarter of the landowner's royalty. *See French*, 896 S.W.2d at 798 ("[W]hen a deed conveys a royalty interest by the mechanism of granting a fractional mineral estate followed by reservations, what is conveyed is a *fraction of* royalty, not a fixed fraction of total production royalty."); *Patrick*, 734 S.W.2d at 648 (owner of fractional mineral interest is generally entitled to a proportionate share of the landowner's royalty). Accordingly, if a new lease had been executed while those "outstanding mineral royalty" interests were still in existence, the prior grantors would have received one-fourth of whatever new landowner's royalty was agreed upon because they owned floating royalty interests. *See French*, 896 S.W.2d at 798. Therefore, the "prior outstanding mineral royalty" interests were of the same size and nature as the Prochaskas' reserved interest. There is no conflict in concluding that the Prochaskas' reserved the possibilities of reverter in those "outstanding mineral royalty reservations."

---

We distinguish our analysis from the one *Hausser* disapproved. The prior deed relied on by the *Neel* court does not appear to have been referenced in the deed actually being construed, whereas the reservation before us does refer to and identify the deeds creating the prior interests. *See Cockrell*, 299 S.W.2d at 675; *Johnson*, 683 S.W.2d at 216. Thus, the Graham–Prochaska deed incorporated the terms of the prior reservations. Additionally, we note the *Neel* court assumed the grantor of the deed before it only intended to convey that which he had received and construed the deed before it in accordance with the prior deed through which he had received his interest. Unlike the *Neel* opinion, our analysis of the language describing the Prochaskas' interest rests on its own, and we have reviewed the incorporated deeds solely for the purpose of clarifying the nature of the "prior mineral royalty reservations." For these reasons, we do not view our considering the earlier deeds as inconsistent with *Hausser*.

***Other arguments***

The Regmunds argue that the absence of certain provisions in the deed precludes us from construing it as reserving a floating royalty interest. They assert that the absence of a "share and share alike" phrase in the deed precludes construing it as reserving a floating royalty interest, claiming that such language was a "factor in [this] court's judgment" in *Hausser*. We do not find any analysis or discussion of the phrase "share and share alike" in that opinion. The Regmunds also point to the absence of a minimum royalty provision. Notwithstanding our recognition that such a provision is probative of a floating royalty interest, *see Hausser*, 345 S.W.3d at 470 & n.1, no authority *requires* such a minimum-royalty provision in order to reserve a floating royalty interest. *Cf. Schlittler*, 101 S.W.2d at 545 (holding a floating royalty interest was granted under future leases without any minimum royalty provision in the deed). Moreover, "[w]e determine the parties' intent from the whole document, not by the presence or absence of a certain provision." *Concord Oil*, 966 S.W.2d at 457.

As a final matter, the Regmunds oppose any construction of the deed that would hold that the Prochaskas reserved or excepted the possibilities of reverter to the floating royalty interests contained within the outstanding reservations.[8] They argue, essentially, that because the parties never used the terms "future rights" or "possibility of reverter" to describe the Prochaskas' interest, such a construction would violate the requirements that reservations be made by using "clear language" and that exceptions "identify, with reasonable certainty the property to be excepted from the larger conveyance." This argument misapplies the requirement that reservations be created by

---

[8] It is in this context that the parties dispute whether the deed created an "exception" or "reservation." We are unconvinced this case "call[s] for a discussion of the refined and subtle distinctions between a reservation and an exception in a deed, which terms are frequently used interchangeably and indiscriminately." *King*, 192 S.W.2d at 262. It is sufficient to say both interests are "something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant." *Id.*

"clear language." If a reservation is not created by clear language, it does not exist and cannot be implied by a court. *Monroe*, 707 S.W.2d at 133. But the dispute over the 1950 deed is not focused on whether the deed actually reserved anything from passing to the Regmunds; the reservation's four clauses manifestly exclude *something*. Instead, the parties' dispute is over the nature and amount of the excluded property rights. A comparison with *Monroe* illuminates the difference.

The appellants in *Monroe* held property as tenants-in-common with the appellees' predecessor-in-interest. *Id.* During the period of the tenancy, the appellants conveyed a determinable royalty interest to their son, and prior to the expiration of that interest, the appellants and appellees partitioned their land. *Id.* In the "subject to" clause listing existing mineral interests, the partition deed listed the son's interest as a "1/64th non-participating for a term of 10 years from August 29, 1953, and as long thereafter as oil, gas or other minerals are produced therefrom with reversion to [appellants] equally upon the expiration of said term." *Id.* It did not otherwise mention the interest. *Id.* The court refused to imply that the "subject to" clause created a reservation. *Id.* It held that half of the outstanding possibility of reverter passed to the appellees under the partition deed because the mere mention of the outstanding future interest in the "subject to" clause did not indicate by clear language the intent to exclude any part of that interest from passing under the deed. *Id.* at 133–34.

The 1950 deed bears no resemblance to the partition deed in *Monroe*. The deed's reservation begins "SAVE AND EXCEPT, however, there is reserved unto George Prochaska, his heirs and assigns . . . ." There is no question that the parties to the deed intended to exclude a one-half floating royalty interest from passing under the deed. *Cf. Bagby*, 627 S.W.2d at 193–95 (holding appellant-grantors validly reserved the possibility of reverter to a determinable royalty interest where the deed identified the outstanding interest in the "subject to" clause and then reserved that interest).

The parties to the deed then provided a detailed description of the excluded interest, and we have construed that deed in accordance with Texas law to determine the nature of that interest. Our construction of the deed is sufficient to show there is no merit to the contention that the Prochaskas' interest, if it was an exception, was not identified to a reasonable certainty. *Compare Angell*, 225 S.W.3d at 841 (holding exception of "the following described tracts of land *which have heretofore been sold and conveyed* to . . . 10 acres conveyed to Jack Ellison . . . 2 acres sold to S.A. Bailey . . . all of said last mentioned . . . acres being out of the Southeast forty acres of said above mentioned [parcel]" sufficiently described the excepted interests), *with State v. Dunn*, 574 S.W.3d 821, 824 (Tex. Civ. App.—Amarillo 1978, writ ref'd n.r.e.) (holding exception of "that part of said tract to be acquired by the Texas State Highway Department for additional right-of-way purposes of Highway 87" failed to identify the excepted area with the requisite certainty).

## CONCLUSION

We ascertain only one reasonable construction of the deed's language and hold that the royalty interest reserved by the deed was a floating one-half royalty interest. In 1950, the Prochaskas conveyed the entirety of their present interest to the Regmunds, but they excluded the possibilities of reverter to two floating one-quarter royalty interests contained in outstanding reservations from passing under the deed, and reserved those interests to themselves. Upon the termination of those prior interests, the Prochaskas' future interests became present possessory interests. Therefore, the Prochaskas are entitled to one-tenth of production under the current lease and to one-half of whatever landowner's royalty may be negotiated under future leases. The judgment of the trial court is affirmed.

Luz Elena D. Chapa, Justice