**TYLER et al. v. BAUGUSS et ux.**

No. 12957.

Court of Civil Appeals of Texas. Dallas.

Jan. 25, 1941.

Rehearing Denied Feb. 22, 1941.

J. Hardy Neel and Ervin Neel, both of Dallas, for appellants.

Thomas B. Ridgell, of Dallas, for appellees.

BOND, Chief Justice.

Laura E. Bauguss, appellee, owned 200 acres of land in Henderson County, Texas, on which she and her husband, L. B. Bauguss, had given an oil, gas and mineral lease to the Humble Oil & Refining Company, reserving unto themselves an undivided one-eighth (⅛) interest in and to all the oil, gas or other minerals in and under and that may be produced and mined from said land. The leasehold and the land adjacent thereto being undeveloped oil property, in oil field lingo, "wildcat" territory, appellants, through the real estate firm of Griffith & Griffith, of Terrell, Texas, sought to block large acreage in that vicinity, including the Bauguss land and lands adjacent thereto, for the purpose of drilling for oil. Mr. and Mrs. Bauguss, in consideration for a well to be drilled on adjoining land belonging to Dr. Rowe, and for drilling operations to be begun within forty days from date of conveyance, agreed to execute a mineral deed

914

to appellants, Tyler & Smith, oil field operators, to an undivided one-tenth (1/10) interest in the royalty retained under said 200 acres, or, in terms as appellees understood it, "Twenty royalty acres or 1/80 of production from said land," and to place the deed in escrow with Mr. Griffith.

On January 27, 1939, Laura E. Bauguss, joined by her husband, L. B. Bauguss, in accordance with said agreement, executed, in the form and manner required by law, a mineral deed, which shall be hereinafter referred to as the original deed, to Tyler & Smith, reciting that: . "For and in consideration of the sum of Ten Dollars cash in hand paid by Tyler & Smith, hereinafter called Grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver, unto the said Grantee, an undivided one-tenth interest in and to all of the oil royalty, gas royalty, and royalty in casinghead gas, gasoline, and royalty in other minerals in and under, and that may be produced and mined from the following described lands situated in the County of Henderson and State of Texas, to-wit: (Here follows description of the 200 acres of land, and the usual provisions in such deeds for ingress and egress at all times for the purpose of mining, etc.)" The deed was signed and separately acknowledged by Bauguss and wife before A. B. Clark, a notary public of Dallas County, Texas, who affixed thereto proper notarial certificate and seal. The deed was retained by the grantors, pending the return of Mr. Griffith, who had gone up-town, in the City of Dallas, on other business.

Simultaneously with the execution of said deed, Mr. and Mrs. Bauguss signed a carbon copy of the deed, which shall be hereinafter referred to as the copy, also an escrow agreement, in the form of a letter, as follows: "Dallas, Texas. January 27, 1939. Messrs. Griffith & Griffith, Terrell, Texas. Gentlemen: Enclosed herewith find Royalty Deed to one-tenth of my royalty in my 200-acre tract of the Jas. M. Gardner Survey, Henderson County, Texas, which is equal to 20 royalty acres. This has been properly executed and acknowledged by the owner and you are instructed and requested to hold this Royalty Deed in your vault together with this letter and deliver same to Tyler & Smith, Drilling Contractors, when they have completed a well on the Rowe and Baker land out of the Childers Survey, adjoining my land on the North, said well to be a fair test of the Woodbine sand. The well to be drilled is to be on the south 250 acres of the Dr. Rowe land. In the event operations are not begun to drill this well by Tyler & Smith within forty days from date hereof, you are instructed to return this Royalty Deed to me. Yours very truly, (signed) Mrs. Laura E. Bauguss, L. B. Bauguss." The copy of the deed was for Mr. Bauguss' files, not intended to be signed or acknowledged; the escrow agreement was to be attached to the original deed and delivered to Mr. Griffith, to be held in escrow for Tyler & Smith.

Subsequent to the execution and delivery of said original deed and the escrow agreement, with the advice and counsel of their daughter, Mrs. C. F. Christian, and their son, Vernon Bauguss, Mr. and Mrs. Bauguss reached the conclusion that the mineral deed which they had duly executed, conveyed to grantees a greater interest in royalties than they intended, and agreed to convey. They interpreted the conveying clause in the deed, to-wit: "An undivided one-tenth interest in and to all of the oil royalty, gas royalty, and royalty in casinghead gas, gasoline, and royalty in other minerals in and under, and that may be produced and mined," from said land, as a conveyance of more than "20 royalty acres or 1/80 of production from said land;" thus, with the consent of Mr. Griffith, they caused to be inserted in the original deed, immediately following the description of the land, the clause: "The intent of this contract is to convey 20 royalty acres or 1/80 of production from said land." Whereupon, Mr. Griffith, who was handling the transactions for appellants, advised Mr. and Mrs. Bauguss that, because of such interlineations having been made in the deed after its execution, the deed should be re-acknowledged and then mailed, with the escrow letter or contract, to him at Terrell.

On January 30, 1939, three days after the original deed was duly executed, and the next day after said interlineations were made in the deed, appellees, with their son Vernon Bauguss, according to their own testimony, left home and went to the office of A. B. Clark, the notary public who took their acknowledgments to the original deed, for the purpose of re-acknowledging and forwarding it, together with the escrow agreement, to Mr. Griffith at

Terrell. On arrival at Mr. Clark's office, Mr. Bauguss presented himself to the notary for the purpose of re-acknowledging the transaction of himself and wife; however, instead of giving Mr. Clark the original deed, with the interlineation, for that purpose, he gave him the carbon copy. Mr. Bauguss testified that Mr. Clark again read and explained the deed to him and then took his acknowledgment, and as he began to prepare the notary certificate and affix the seal, he advised Mr. Clark that his wife was immediately outside his office, sitting in a car with her son, and requested him to go out there. He said: "Mr. Clark, don't you have to go and get my wife's acknowledgment? She is here—out there in the car—and hadn't you better go out there?" And he (Mr. Clark) said: "Oh, no, that is not necessary." Mr. Bauguss further testified that he did not know whether it was necessary to have the deed re-acknowledged or not; he said, "I thought it was all right," and "when Mr. Clark signed and sealed the carbon copy, he handed it back to me—I asked him for a stamp and envelope, enclosed the deed and escrow letter and mailed them to Mr. Griffith." In response to questions, Mr. Bauguss testified further:

"Q. What was the understanding with Mr. Griffith, if any, when he was holding this escrow, when was he to deliver the deed? * * * I say, when was he to deliver it to Tyler & Smith? * * * A. This is it—the letter Mr. Griffith wrote me."

Letter mentioned is as follows:

"Terrell, Texas, January 31, 1939
"Mrs. Laura E. Bauguss,
"Dallas, Texas.
"Dear Madam:
"The Royalty Deed to one-tenth interest in 200 acres Gardner Survey to Tyler & Smith received. I will be governed by your instructions that the well is to be drilled on the South 250 acres of the Rowe & Baker land and if the well commenced is not drilled to exploit the Woodbine sand, I will not deliver the deed to them. Herewith find $1.00 bill to pay the Notary charges.
"Yours very truly,
"(Signed) Griffith & Griffith
"By W. Charlton Griffith"

Mrs. Bauguss and her son each testified, corroborating the testimony of Mr. Bauguss, that Mrs. Bauguss never appeared before the notary public to acknowledge the carbon copy of the deed; Mrs. Bauguss testifying that she accompanied her husband to the notary's office for that purpose, but had not fully made up her mind. She said: "I thought I would have Mr. Clark to read it over and explain it to me, you know, before I acknowledged it, and after he did, if he could explain it real satisfactorily, I guess I would—might have acknowledged it—yes, sir." She said she learned from her husband that he had mailed the deed to Mr. Griffith. "Q. Well, now, Mrs. Bauguss, your husband was looking after matters, was he, or not? Was he? A. He was—yes, sir." Vernon Bauguss testified to the same effect, that his mother did not appear before the notary public on January 30 to acknowledge the copy of the deed. Against the testimony of appellee, Mr. Clark, long a friend and neighbor of Mr. and Mrs. Bauguss and a stranger to appellants, testified that he took the separate acknowledgments of Mr. and Mrs. Bauguss at their home, the first acknowledgment being on January 27, 1939, to the original deed, and the second on January 30, 1939, to the carbon copy, and that the notarial certificates, in form required by law, correctly reflect his official acts.

The record shows that the deed, without Griffiths', Tyler's or Smith's knowledge of any defects therein, was held by Mr. Griffith, and that appellants began operations for the drilling of a well 150 feet from appellees' land line, on Dr. Rowe's land, within forty days from the date of the deed, and discovered oil thereon, thereafter making demands upon Mr. Griffith for the deed then in escrow. Appellees made no request of Griffith, before oil was discovered, for the return of the deed, but thereafter refused to allow delivery of same to appellants, resulting in the institution of this suit.

The suit is one in trespass to try title and for damages. Appellants, in pleadings and proof, contend that the instruments forming the basis of their claim to an undivided interest in royalties from the land in suit were acknowledged and delivered, thus became a legal conveyance of title; and that appellees, perforce of their acts and deeds, because of the enhanced value of their estate, due to the efforts of appellants, are estopped to claim the invalidity and nondelivery of such conveyance.

The cause was tried to a jury and, on findings that the grantor, Laura E. Bauguss, did not appear before A. B. Clark on January

30, 1939, and acknowledge the instrument placed in escrow with Griffith & Griffith, judgment was entered that appellants recover nothing; also decreed that "the royalty deed in evidence in this cause and held in escrow by Griffith & Griffith be and the same is canceled and declared void."

As has been shown, appellees contend that, as the original deed, bearing the notary's certificate of date January 27, 1939, was never, after its alteration, reacknowledged and delivered; and as the carbon copy, bearing the notary's certificate of January 30, 1939, was delivered but never acknowledged by Laura E. Bauguss, appellants' title to the purported royalty interest described in the deeds failed.

■ The law is well settled in this state that any alteration made in a written instrument, which does not materially change the instrument, making it read differently from its original provisions, and which does not cause the instrument to speak differently in legal effect from that which it spoke originally, then there is no material alteration rendering the instrument void. The validity and operation, or apparent regularity of an instrument is not affected by such a change. Commercial Credit Co. v. Giles, Tex.Civ. App., 207 S.W. 596; Clem v. Chapman, Tex. Civ.App., 262 S.W. 168.

■ In the instant case, it is evident that the clause in appellees' original deed, conveying to appellants "an undivided one-tenth" of the 1/8 royalty retained by them in the 200 acres, is equivalent to the interlineated clause—"20 royalty acres or 1/80" of all production. Therefore, manifestly, such interlineation made no material change in the reading of the deed and in no way affected its validity and operation. The interlineated clause shows it was intended only to clarify the granting clause of the deed, being in language more familiar to the grantors, and, in effect, a repetition only. The quantum of property to be conveyed was not changed. The conveying clause, "have granted, sold, conveyed, assigned and delivered, * * * unto the grantee, an undivided one-tenth interest in and to all of the oil royalty," etc., in both the original and copy deed, is, in effect, a conveyance of "20 royalty acres or 1/80" of all production. Thus, the change or alteration not having, in legal effect, changed the wording or meaning of the deed, it was unnecessary to have either instrument re-acknowledged because of such explanatory interlineation.

The deed was sufficient with or without the interlineation to convey title to the property which the parties intended to convey and, on delivery, vested title in the grantees. Therefore, the only issue involved is, whether the deed was legally delivered to appellants.

■ The evidence on the issue of delivery is of such probative force as to leave no doubt that appellees intended to deliver the deed, and we think the deed was, in legal effect, delivered. When a grantor signs and acknowledges a deed, and afterward, either by acts or words, indicates that he vested and recognized the property as belonging to the grantee— even though possession be retained by the grantor—delivery is complete. The law prescribes no form of action or words to constitute delivery of a deed. The grantee will not be deprived of his rights where the grantor intended to invest him with title, though there be no manual delivery of a duly executed instrument. If the deed shall be so disposed of or held by grantor, as to clearly evince an intention on his part that it shall have effect as a conveyance, it is a sufficient delivery. As stated in More v. More, Tex.Civ.App., 7 S.W.2d 1096, 1098: "Actual manual delivery of the deed into the hands of the grantee by the grantor in person was not essential to pass title. Brown v. Brown, 61 Tex. [56] 60; Henry v. Phillips, 105 Tex. 459, 151 S.W. 533. But where, as in this case, there was no such delivery, it is necessary, in order to pass title, to show that the deed was duly executed by the grantor, and that it was the purpose and intention of the grantor to himself deliver the instrument to the grantee or to have it delivered by others to the grantee, for the purpose of passing title to the grantee. Henry v. Phillips, supra."

It will be seen that Laura E. Bauguss and L. B. Bauguss were under contractual obligation to convey a certain proportionate undivided royalty interest in the 200 acres of land owned by them, make a necessary conveyance and deliver same to Mr. Griffith to be held in escrow, pending the operation and drilling of a well by appellants. They executed the conveyance, in accordance with their contract in all the formalities required by law, declaring therein that they had "granted, sold, conveyed, assigned and *delivered,* and by these presents do grant, sell, convey, assign and *deliver,*" the royalty interest described in the deed. There can be no question that,

at that time, at least, appellees intended to convey and deliver to appellants the deed as executed. It is equally certain that the grantors evinced the intention of delivering the escrow letter or agreement addressed to Mr. Griffith, which was to accompany the deed, and which expressly stated: "Enclosed herewith find royalty deed * * *. This has been properly executed and acknowledged by the owner and you are instructed and requested to hold this royalty deed in your vault together with this letter and deliver same to Tyler & Smith, Drilling Contractors, when they have completed a well on the Rowe & Baker land. * * *" It is clear that a true copy was mailed in contemplation of investing appellants with title; that Mr. Griffith received the copy with the escrow letter attached, without knowledge of its irregularity, if, in fact, any existed, and that appellants performed their covenants by commencing operation for the drilling of a well within the allotted time. It is evident that appellees, in mailing the copy and the escrow agreement, under a belief, as Mr. Bauguss said, "I thought it was all right", thus leaving appellants to labor under a like understanding, recognized the legal delivery of the deed. If such was their thought or intention, the law should effectuate it, rather than indulge a nice distinction that the manual retention of the original deed, under the circumstances in this case, thwarted that which was plainly (several months before oil was discovered) their purpose. Mrs. Laura E. Bauguss knew that the copy and escrow agreement had been mailed for transmission to Mr. Griffith and held by him for the purpose intended. She made no effort to prevent its delivery to appellants. She did not recall it, neither did she make any attempt to do so. On the contrary, after the well was drilled, oil was discovered, and the value of their estate, because of the discovery of oil, had increased an hundredfold, Mr. Bauguss, for the first time, and Mrs. Bauguss never, divulged the irregularity of delivery to defeat appellants' title. With this true and clearly evidencing an intention that the deed have effect, it is of no consequence that appellees retained the original and sent the carbon copy, even though it could reasonably be said that the carbon copy was never acknowledged by either of the grantors.

If what the law regards as a delivery had been accomplished, the retaining of the original deed, and sending a copy evidencing the purposes of the original, would not defeat the conveyance of title. Relief will be granted when the legal effect of a transaction is misapprehended, if such misapprehension be induced or brought about by misleading acts and deeds of the other contracting parties. As a rule of reason and common sense, the delivered instrument amounts to a delivery of the duly executed deed and should operate by a presumed assent. Equity regards as done that which ought to have been done; looks to the intent, rather than to the form of a transaction.

The judgment of the court below is reversed and judgment here rendered in favor of appellants for title and possession of the proportionate royalty conveyed in the mineral deed, as of date January 27, 1939, with all the rights, privileges and limitations there granted or reserved; and that the deed held in escrow by Mr. Griffith should be delivered to appellants for the purpose of proper registration.

Reversed and rendered.