ACCEPTED
04-14-00711-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
6/18/2015 5:16:29 PM
KEITH HOTTLE
CLERK

## No. 04-14-00711-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

06/18/2015 5:16:29 PM

KEITH E. HOTTLE
Clerk

**IN THE COURT OF APPEALS
FOURTH DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

_____

**PETER J. DRAGON**,

*Appellant,*

**V.**

**CHARLES E. HARRELL AND HOLLIS R. HARRELL**,
*Appellees*.

_____

Cause No. 13-1100232-CVK
On Appeal from the 218th Judicial District Court, Karnes County, Texas
Honorable Donna S. Rayes, Judge Presiding

_____

**BRIEF OF APPELLEES**

_____

Jesse R. Castillo
State Bar No. 03986600
*jcastillo@casnlaw.com*
CASTILLO SNYDER, P.C.
Bank of America Plaza, Suite 1020
300 Convent Street
San Antonio, Texas 78205
Telephone: (210) 630-4200
Facsimile: (210) 630-4210

***Attorneys for Appellees Charles E.
Harrell and Hollis R. Harrell***

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

*Plaintiffs/Appellees:*     Charles E. Harrell
              Hollis R. Harrell

*Trial and Appellate Counsel:*   Jesse R. Castillo
              jcastillo@casnlaw.com
              Edward C. Snyder
              esnyder@casnlaw.com
              Melanie A. Castillo
              mcastillo@casnlaw.com
              CASTILLO SNYDER, P.C.
              300 Convent Street, Suite 1020
              San Antonio, Texas 78205
              (210) 630-4200
              (210) 630-4210 (Facsimile)

*Defendant/Appellant:*     Peter J. Dragon

*Trial and Appellate Counsel*:   Clinton M. Butler
              cbutler@langleybanack.com
              Elizabeth R. Kopecki
              ekopecki@langleybanack.com
              LANGLEY, BANACK & BUTLER
              114 N. Panna Maria Avenue
              Karnes City, Texas 78118
              (830) 780-2700
              (830) 780-2701 (Facsimile)

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................... ii

TABLE OF AUTHORITIES ................................................................................ iv

REFERENCE CITATION GUIDE............................................................................ vii

STATEMENT OF THE CASE .............................................................................. viii

STATEMENT REGARDING ORAL ARGUMENT ........................................................... viii

STATEMENT OF FACTS................................................................................... 1

SUMMARY OF ARGUMENT ................................................................................ 3

ARGUMENT .............................................................................................. 5

I.      After considering the competing motions for summary judgment and
        responses thereto, the trial court properly granted the Harrells' traditional
        motion for summary judgment. .................................................................. 5

        A.      Standard of Review ............................................................... 5

        B.      The trial court properly adopted the Harrell's construction of the
                Reservation in the Harrell Deed ................................................. 7

II.     After considering the competing motions for summary judgment and
        responses thereto, the trial court properly denied Dragon's traditional motion
        for summary judgment.............................................................................. 13

        A.      Impairment Of Future Leasing Not A Factor.................................. 18

        B.      Appellant Did Not Plead Ambiguity ............................................ 20

PRAYER FOR RELIEF..................................................................................... 22

CERTIFICATE OF COMPLIANCE ......................................................................... 23

CERTIFICATE OF SERVICE................................................................................ 24

**Cases**

*Altman v. Blake*,
712 S.W.2d 117 (Tex. 1986) ...............................................................................5, 9

*Arnold v. Ashbel Smith Land Co.*,
307 S.W. 2d 818 (Tex. Civ. App.—Houston 1957, writ ref'd n.r.e.) .......4, 18

*Ayert v. Grande, Inc.*,
717 S.W.2d 891 (Tex. 1986) ...............................................................................21

*Benge v. Scharbauer*,
152 Tex. 447, 259 S.W.2d 166 (1953) ...........................................................22

*BP America Production Co. v. Zaffirini*,
419 S.W.3d 485 (Tex. App.—San Antonio 2013, pet. denied) ......................6

*Brown v. Howard*,
593 S.W.2d 939 (Tex. 1980) ........................................................ 4, 10, 12

*Brown v. Smith*,
141 Tex. 425, 174 S.W.2d 43 (1943) .........................................................4, 10

*City of Galveston v. Tex. Gen. Land Office*,
196 S.W.3d 218 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ............6

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) ................................................................................6

*Clifton v. Koontz*,
325 S.W.2d 684 (Tex. 1959) ..................................................................... 19, 20

*Cockrell v. Gulf Sulphur Co.*,
157 Tex. 10, 15, 299 S.W.2d 672 (1957) ....................................................21

*Coghill vs. Griffith*,
358 S.W.3d 834 (Tex. App. —Tyler 2012, pet. denied) ............ 11, 12, 13, 15

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*,
940 S.W.2d 587 (Tex. 1996) .............................................................................20

*Dawkins v. Hysaw*,
450 S.W.3d 147 (Tex. App.—San Antonio 2014, pet. filed) ........... 13, 17, 18

*FM Props. Operating Co. v. City of Austin*,
22 S.W.3d 868 (Tex. 2000) .................................................................................6

*Frost Nat'l Bank v. L & F Distribs., Ltd.*,
165 S.W.3d 310 (Tex.2005) ...............................................................8

*Gavenda v. Strata Energy, Inc.*,
705 S.W.2d 690 (Tex. 1986) ...........................................................4, 18

*Harris v. Ritter*,
279 S.W.2d 845 (Tex. 1955) ......................................................... 11, 12

*HECI Exploration Co. v. Neel,*
982 S.W.2d 881 (Tex. 1998) ...............................................................8

*Helms v. Guthrie*,
573 S.W.2d 855 (Tex. App. —Fort Worth 1978, writ ref'd n.r.e.*)*................11

*Hicks v. Castille*,
313 S.W.3d 874 (Tex. App. 2010) .......................................................6

*J.M. Davidson, Inc. v. Webster,*
128 S.W.3d 223 (Tex.2003) ...............................................................8

*Luckel v. White*,
819 S.W.2d 459 (Tex. 1991) ............................................................5, 9

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*,
289 S.W.3d 844 (Tex. 2009) ...............................................................6

*Markert v. Williams,*
874 S.W.2d 353 (Tex.App.-Houston [1st Dist.] 1994, writ denied) ..............9

*Matagorda Hosp. Dist. v. Burwell,*
189 S.W.3d 738 (Tex. 2006) ...............................................................8

*Moore v. Noble Energy, Inc.*,
374 S.W.3d 644 (Tex. App.—Amarillo 2012, no pet.)................................19

*Range Resources Corporation v. Bradshaw*,
266 S.W.3d 490 (Tex. App.—Fort Worth 2008, pet. denied)...................3, 13

*Reeves v. Towery*,
621 S.W.2 209 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e. (*citations omitted*) .............................................................................................21

*Schlitter v. Smith*,
128 Tex. 628, 101 S.W.2d 543 ......................................................... 11, 13

*Stag Sales Co. v. Flores*,
697 S.W.2d 493 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)....... 14, 16

*State Nat. Bank of Corpus Christi v. Morgan*,
    143 S.W.2d 757 (Tex. 1940) ................................................................ 14, 17

*Tenneco, Inc. v. Enterprise Products Co.,*
    925 S.W.2d 640 (Tex. 1996) ..................................................................8

*Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.,*
    253 S.W.3d 184 (Tex.2007) ...................................................................7

*Tyler v. Bauguss*,
    148 S.W.2d 912 (Tex. Civ. App.—Dallas 1941, writ dism'd judgm't cor.)14, 16

*Valence Operating Co. v. Dorsett*,
    164 S.W.3d 656 (Tex. 2005) ..................................................................8

*White v. White*,
    830 S.W.2d 767 (Tex. App.—Houston [1st Dist.] 1992, writ denied) .....4, 10

*Wynne/Jackson Development, L.P. vs. PAC Capital Holdings, Ltd.*
    No. 13-12-00449-CV, (Tex.App. —Corpus Christi 2013, pet. denied)........11

## Rules

TEX. R. CIV. P. 166a(c)..............................................................................6

## Other Authorities

2 Patrick H. Martin & Bruce M. Kramer, *Williams & Meyers Oil and Gas Law*, §
    327.2 (LexisNexis Matthew Bender 2009) .....................................................4

REFERENCE CITATION GUIDE

**The Parties**

This Brief may refer to the parties as follows:

Appellant Peter J. Dragon        "Appellant" or "Dragon"

Appellees Charles E. Harrell        "Appellees" or "Harrells"

**The Record on Appeal**

This Brief will refer to the record as follows:

Appellant's Brief        "A'ants Br. At __"

Clerk's Record        "CR __"

Reporter's Record        "RR __"

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the case* | This is a declaratory judgment action on the construction and interpretation of a reservation clause in a Warranty Deed with Vendor's Lien (the "Harrell Deed") dated February 8, 1991, executed by Hollis R. Harrell and wife, Mary Harrell, conveying a 9.954 acre tract in Karnes County, Texas, to Peter J. Dragon and Sharon Dragon.  1 CR 8. |
| *Course of proceedings* | Appellees Charles E. Harrell and Hollis R. Harrell (the "Harrells") and Appellant Peter J. Dragon ("Dragon") filed competing motions for summary judgment.  After considering the motions and responses thereto, the Court granted Appellees' Motion for Summary Judgment and denied Appellant's Motion for Summary Judgment.  1 CR 141-43. |
| *Trial court's disposition* | The trial court found that the reservation clause in the Warranty Deed granted Appellees a fractional royalty interest.  The trial court entered final judgment whereby it ordered and decreed that the Harrells own a one half (1/2) royalty interest in the 9.954 acre tract of land situated within the Ramon Musquiz Four League Grant, A-7 Karnes County, Texas, and being that certain Tract No. One (4.85 acres) and Tract No. Two (3.51 acres) (by re-survey found to contain 9.954 acres) as described in the Warranty Deed.  1 CR 141-42.  The trial court awarded attorneys' fees and post judgment interest to the Harrells pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.  1 CR 142.  Appellant is not appealing the attorney's fees award. |

## STATEMENT REGARDING ORAL ARGUMENT

Appellees Charles E. Harrell and Hollis R. Harrell request oral argument in this proceeding.  While the issue presented may be summarily dismissed based on this court's review of the record below, oral argument will assist the court in analyzing the legal issues herein presented.

On or about March 17, 1978, General Portland, Inc., as Grantor, executed a Special Warranty Deed conveying three parcels of land in Karnes County, Texas to Hollis R. Harrell and his wife, Mary Harrell, as Grantees (the "Special Warranty Deed"). CR 5. On or about February 8, 1991, by Warranty Deed with Vendor's Lien, Hollis R. Harrell and wife, Mary Harrell, conveyed 9.954 acres of land to Peter J. Dragon and wife, Sharon M. Dragon (the "Warranty Deed"). CR 6. The Warranty Deed conveyed a 9.954 acre tract of land situated within the Ramon Musquiz Four League Grant, A-7 Karnes County, Texas, and being that certain Tract No. One (4.85 acres) and Tract No. Two (3.51 acres) (by this survey found to contain 9.954 acres) as described in the Special Warranty Deed ("Subject Land"). *Id.* The Warranty Deed contained the following non-participating royalty interest reservation:

> "SAVE AND EXCEPT HOWEVER, and there is hereby reserved unto the Grantors, their heirs and assigns, a free non-participating interest in and to the royalty on oil, gas and other mineral in and under the hereinabove described property, consisting of ONE-HALF (1/2) of the interest now owned by Grantors together with ONE-HALF (1/2) of the reversionary rights in and to the presently outstanding royalty in on and under said property, perpetually from date hereof"

(the "Reservation"). *Id.*

On or about February 17, 1993, as a result of the divorce between Sharon M. Dragon and Peter J. Dragon, Sharon M. Dragon executed a Special Warranty Deed

conveying 6.44 acres (called 4.85 acres) of land, more or less out of the Roman Musquiz Four League Grant, to Peter J. Dragon, a/k/a Peter Joseph Dragon, as Grantee, LESS AND EXCEPT, 3.51 acres of land, more or less, being described as Tract Two in that certain Special Warranty Deed effective March 17, 1978, from General Portland, Inc., as Grantor, to Hollis R. Harrell and wife, Mary Harrell, as Grantees, recorded in Volume 474, Page 514 of the Deed Records of Karnes County, Texas. CR 6-7. As a result of the Sharon M. Dragon Special Warranty Deed, Defendant Peter J. Dragon owns the mineral interest conveyed in the Warranty Deed subject to the Reservation. CR 7.

As of March 17, 1978, the Hollis R. Harrell and Mary Harrell ownership interest was subject to a 1/32 nonparticipating royalty interest in Dorice Winerich for her life. *Id.* Dorice Winerich died on October 6, 1994, and her 1/32 non-participating royalty interest terminated. *Id.*

By Special Warranty Deed dated July 10, 2006, Charles E. Harrell and Hollis R. Harrell, Jr., Trustees of the Mary Swain Harrell Living Trust, conveyed a fifty percent (50%) interest in the undivided mineral interest in the Subject Land to Charles E. Harrell and a fifty percent (50%) interest in the undivided mineral interest in the Subject Land to Hollis R. Harrell. *Id.*

The Harrells filed their Original Petition for Declaratory Judgment asking the court to interpret the Reservation as reserving a one half (1/2) royalty interest

2

in the Subject Land, entitling the Harrells to a stated fraction of total production of the oil and gas produced from the land. CR 4-15. Dragon filed his Original Answer and Original Counterclaim asking the court to interpret the Reservation as reserving a one-half fraction of royalty interest, conveying a fractional share of the royalty. CR 17-31.

## SUMMARY OF ARGUMENT

This case hinges on the construction and interpretation of the reservation clause in the Warranty Deed. The critical question is whether the Reservation constitutes a "fractional royalty interest" or a "fraction of royalty." The law makes a major distinction between a "fractional royalty interest" and a "fraction of royalty." A "fraction of royalty" conveys a fractional share of the royalty that is contained in an oil and gas lease and is not fixed, but rather "floats" in accordance with the size of the landowner's royalty in the lease. *Range Resources Corporation v. Bradshaw*, 266 S.W.3d 490, 493 (Tex. App.—Fort Worth 2008, pet. denied). The amount to be paid to the owner is determinable upon the execution of some future lease and is calculated by multiplying the fraction in the royalty reservation by the royalty provided by the lease.

There is no language in the Reservation that is typical of—or indicates that the parties intended to—create a "fraction of royalty" interest. Instead, the Harrell Deed, when read as a whole, shows an unambiguous intent by the Grantors to

3

reserve a one-half (1/2) fractional royalty interest. The owner of a fractional royalty is entitled to the stated fraction of gross production, unaffected by the royalty reserved in the lease. *See Brown v. Smith*, 141 Tex. 425, 174 S.W.2d 43 (1943). "Thus the owner of a 1/16 royalty takes 1/16 of gross production whether the lease provides for a lessor's royalty of 1/16, 1/8 or ¼." 2 Patrick H. Martin & Bruce M. Kramer, *Williams & Meyers Oil and Gas Law*, § 327.2 (LexisNexis Matthew Bender 2009). Texas case law is clear that a reservation of an undivided fractional royalty interest is just that—an undivided interest in production, not an interest reduced by a base royalty. *See Brown v. Howard*, 593 S.W.2d 939 (Tex. 1980); *White v. White*, 830 S.W.2d 767 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

The size of the fractional interest reserved, or the possibility that the reservation would impair the future ability to lease, are not factors to be considered in the construction of fractional royalty interest reservations. *See Arnold v. Ashbel Smith Land Co.*, 307 S.W. 2d 818 (Tex. Civ. App.—Houston 1957, writ ref'd n.r.e.); *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690 (Tex. 1986). The court does not determine the parties' intent based on the quantum of production to which the holder of a particular interest may be entitled. The primary duty of a court in determining the construction of an unambiguous deed is to ascertain the intent of the parties by a fundamental rule of construction known as the "four corners" rule.

*Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The interpretation of the contract is controlled by the parties' intentions as expressed within the four corners of the instrument. *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986). In seeking to ascertain the intention of the parties, the court must attempt to harmonize all parts of the deed. *Id.* Qualifiers and parentheticals are critical in the final construction and interpretation. *Brown*, 593 S.W.2d at 942. No case has found that "in and to" means "of" without additional qualifiers in the instrument.

In considering the competing motions for summary judgment and responses thereto and the arguments of counsel, the trial court properly rendered final judgment in favor of appellees. The trial court properly determined that the Harrells are entitled to judgment as a matter of law construing the Reservation as reserving a one-half (1/2) royalty interest in the Subject Land.

**ARGUMENT**

**I. After considering the competing motions for summary judgment and responses thereto, the trial court properly granted the Harrells' traditional motion for summary judgment.**

**A. Standard of Review**

To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *BP America Production Co. v. Zaffirini*, 419 S.W.3d

485, 495 (Tex. App.—San Antonio 2013, pet. denied); TEX. R. CIV. P. 166a(c). In reviewing the trial court's judgment, the appellate court typically examines "the evidence presented in the motion and response in the light most favorable to the party against whom the party the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). However, "[w]hen both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence [,]…determine all questions presented[,]…[and] render the judgment that the trial court should have rendered." *BP America Production Co,* 419 S.W.3d. at 495 (*citing FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) (citations omitted)).

When a trial court resolves a declaratory judgment action on competing motions for summary judgment, the appellate court reviews the propriety of the declaratory judgment under the same standards applied in reviewing a summary judgment. *Hicks v. Castille*, 313 S.W.3d 874, 879-80 (Tex. App. 2010) (*citing City of Galveston v. Tex. Gen. Land Office*, 196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)). The appellate court reviews a trial court's

decision to grant or to deny a motion for summary judgment *de novo. See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.,* 253 S.W.3d 184, 192 (Tex.2007). Although the denial of summary judgment is ordinarily not appealable, an appellate court may review such a denial when both parties moved for summary judgment and the trial court granted one and denied the other. *Id.*

Here, both parties moved for summary judgment on their respective claims involving the interpretation of the Reservation clause. The trial court, after reviewing the motions and responses thereto and hearing arguments of counsel, found that as a matter of law the Harrells' interpretation of the Reservation clause entitled them to a fractional royalty interest and properly granted summary judgment in their favor. This court should affirm the trial court's decision.

### B. The trial court properly adopted the Harrell's construction of the Reservation in the Harrell Deed

The trial court's judgment adopted the Harrells construction of the unambiguous warranty deed Reservation. The Harrells read the Warranty Deed Reservation as reserving a one-half (1/2) royalty interest in the Subject Land. CR 7. In other words, the Reservation reserved a fixed fractional royalty interest entitling the Harrells to the one-half (1/2) of total production of the oil and gas produced from the Subject Land. Dragon, on the other hand, reads the Reservation as unambiguously reserving a one-half fraction of royalty interest that was owned by the Harrells at the time the Harrell Deed was executed. CR 19.

7

### 1. Legal Standard for Deed Construction

In construing a written contract, the court's primary concerns are to ascertain and to give effect to the parties' intentions as expressed in the document. *Frost Nat'l Bank v. L & F Distribs., Ltd.,* 165 S.W.3d 310, 311–12 (Tex.2005). Ordinarily, the writing alone is sufficient to express the parties' intentions for it is the objective, not subjective, intent that controls. *Matagorda Hosp. Dist. v. Burwell,* 189 S.W.3d 738, 740 (Tex. 2006) (per curiam). To give effect to the parties' intentions, the court should consider the entire writing and attempt to harmonize and give effect to all of the provisions of the agreement by analyzing the provisions with reference to the whole agreement. *Id.* at 312. The court should not give any single provision controlling effect. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003).

Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Courts are not authorized to rewrite agreements to insert provisions parties could have included or to imply terms for which they have not bargained. *Tenneco, Inc. v. Enterprise Products Co.,* 925 S.W.2d 640, 646 (Tex. 1996). In other words, courts cannot make contracts for the parties. *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 888 (Tex. 1998).

A contract is not ambiguous simply because the parties disagree over its interpretation. *Markert v. Williams,* 874 S.W.2d 353, 355 (Tex.App.-Houston [1st Dist.] 1994, writ denied). Nor does uncertainty or a lack of clarity in the language chosen by the parties suffice to render a contract ambiguous. *Id.* If, after applying the relevant rules of construction, the court can give the agreement a definite or certain legal meaning, the agreement is unambiguous, and is construed as a matter of law *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986).

In interpreting a deed, the primary duty of a court is to ascertain the intent of the parties by a fundamental rule of construction known as the "four corners" rule. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The interpretation of the contract is controlled by the parties' intentions as expressed within the four corners of the instrument. *Altman*, 712 S.W.2d at 118. In seeking to ascertain the intention of the parties, the court must attempt to harmonize all parts of a deed. *Id.* Even if different parts of the deed appear contradictory or inconsistent, the court must strive to construe the instrument to give effect to all of its provisions. *Luckel*, 819 S.W.2d at 462.

### 2. The Language of the Reservation Reserved a Fractional Royalty

The dispute hinges on the construction and interpretation of the reservation clause in the Warranty Deed. The Harrells' interpretation of the Reservation is that the Grantors reserved a one-half (½) royalty interest in the Subject Land as a result

of the Reservation.  Appellant's interpretation of the Reservation is that Grantors reserved a one-half (½) of royalty in the Subject Land as a result of the Reservation.  The Harrells met their burden to establish they are entitled to judgment as matter of law, that the Reservation reserved a one-half (½) royalty interest, in the Subject Land.

The language in question is a reservation of "a free non-participating interest in and to the royalty on oil gas and other mineral in and under the above described property consisting of one-half (1/2) of the interest now owned by Grantors together with one-half (1/2) of the reversionary rights in and to the presently outstanding royalty in, on and under said property, perpetually from date hereof" (the "Reservation").

Where a conveyance or reservation is phrased as a fractional royalty interest, the owner is entitled to the stated fraction of total production of the oil and gas produced from the land.  *Brown v. Smith*, 141 Tex. 425, 174 S.W.2d 43 (1943).  This interest in production is fixed and does not vary with the fractional royalty that may be payable under a particular lease.  Texas case law is clear that a reservation of an undivided fractional royalty interest is just that--- an undivided interest in production, not an interest reduced by a base royalty.  See *Brown v. Howard*, 593 S.W.2d 939 (Tex. 1980) and *White v. White*, 830 S.W.2d 767 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

The Warranty Deed, when read as a whole, shows an unambiguous intent by the Grantors to reserve a one-half (1/2) fractional royalty interest. The first part of the Reservation, "a free non-participating interest in and to the royalty on oil gas and other mineral in and under the above described property," does not quantify the interest reserved, and necessarily relies on the language following to define and clarify the interest reserved. In fact, without the additional language, the phrase would necessarily reserve a one hundred percent (100%) royalty interest then owned by the Harrells. There is no reference in the phrase to existing leases or existing or future production. All cases that have held similar language to be either a "fractional royalty interest" or a "fraction of royalty" have looked at the instrument as a whole, particularly with respect to qualifiers, parentheticals, or other clarifications included in the instrument. *Eg*. *Schlitter v. Smith*, 128 Tex. 628, 101 S.W.2d 543, 544 (Tex. Comm'n App. 1937); *Coghill vs. Griffith*, 358 S.W.3d 834, 838 (Tex. App. —Tyler 2012, pet. denied); *Harris v. Ritter*, 279 S.W.2d 845 (Tex. 1955); *Helms v. Guthrie*, 573 S.W.2d 855, 857 (Tex. App. —Fort Worth 1978, writ ref'd n.r.e.*); Wynne/Jackson Development, L.P. vs. PAC Capital Holdings, Ltd.* No. 13-12-00449-CV, (Tex.App. —Corpus Christi 2013, pet. denied).

As an example, *Coghill* involved a reservation of "an undivided one-eighth (1/8th) interest in and to all of the oil and gas royalty". Although the Court found

11

this to be a "fraction of royalty", the Court relied on "qualifiers" in making its ruling. The deed in *Coghill* included additional language that it was subject to an existing lease and reserved a 1/8[th] royalty under that lease and the usual 1/8th of 1/8th royalties in any future leases. So *Coghill* is distinguishable based on the additional qualifying language.

In *Harris v. Ritter,* the Texas Supreme Court held that the phrase "grantors herein reserve to themselves from this conveyance one-half (1/2) of one eighth (1/8) of the oil, gas and other minerals **royalty** [emphasis added] that may be produced from said land …" reserved a fractional royalty interest, despite the use of the word "of" in the phrase based on the context of the deed. *Harris v. Ritter*, 279 S.W.2d at 847-8.

Qualifiers, and parentheticals and other clarifications are critical in the final construction and interpretation. *Brown v. Howard, 593 S.W.2d at 942*. No case has found that "in and to" means "of" without additional qualifiers, parantheticals and other clarifications in the instrument.

The critical qualifier or clarification for the interest in the Reservation is "consisting of one-half of the royalty interest now owned by" the Harrells at the time of the Warranty Deed. At the time of the Warranty Deed, the Harrells owned one hundred percent (100%) of the minerals, and thus, a one hundred percent (100%) royalty interest. There were no outstanding leases covering the property at

12

the time the Warranty Deed was executed. The reservation was expressly for "royalty on oil, gas and other minerals in and under" the property, without <u>any</u> reference to future production. One-half (1/2) of a one hundred percent (100%) royalty interest is logically and unambiguously a fifty percent (50%) fractional royalty interest.

**II. After considering the competing motions for summary judgment and responses thereto, the trial court properly denied Dragon's traditional motion for summary judgment.**

A "fraction of royalty" conveys a fractional share of the royalty that is contained in an oil and gas lease is not fixed, but rather "floats" in accordance with the size of the landowner's royalty contained in the lease. *Range Resources Corporation v. Bradshaw*, 266 S.W.3d 490, 493 (Tex. App. —Fort Worth 2008, pet. denied). The amount to be paid to the owner is determinable upon the execution of some future lease and is calculated by multiplying the fraction in the royalty reservation by the royalty provided in a lease.

Appellant argues that the language in the Reservation is consistent with what Texas cases have found to be a fraction of royalty. Appellant cites six cases to support his contention that the Reservation is a fraction of royalty reservation and not a fractional royalty: *Dawkins v. Hysaw*, 450 S.W.3d 147 (Tex. App.—San Antonio 2014, pet. filed); *Coghill v. Griffitti*, 358 S.W.3d 834 (Tex. App. – Tyler 2012, pet. denied); *Schlitter v. Smith*, 101 S.W.2d 543 (Tex. 1937); *Stag Sales Co.*

13

*v. Flores*, 697 S.W.2d 493 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.); *Tyler v. Bauguss*, 148 S.W.2d 912 (Tex. Civ. App.—Dallas 1941, writ dism'd judgm't cor.); *State Nat. Bank of Corpus Christi v. Morgan*, 143 S.W.2d 757 (Tex. 1940). The language in the deeds in each of the six cases cited by Appellant is not the language in the Reservation. The language in the Warranty Deed shows that under the context of the Reservation, the grantors reserved a one-half royalty in the Subject Lands.

The Court should compare the language in the Reservation with the language in *Coghill* and the other cases cited by Defendant. The Reservation reads as follows:

> RESERVATION: SAVE AND EXCEPT HOWEVER, and there is hereby reserved unto the Grantors, their heirs and assigns, a free non-participating interest in and to the royalty on oil, gas and other mineral in and under the hereinabove described property consisting of **ONE-HALF (½) of the interest** now owned by Grantors together with ONE-HALF (½) of the reversionary rights in and to the presently outstanding royalty in on and under said property, perpetually from date hereof.

CR 11.

The reservation in the *Coghill* deed provided as follows:

> [T]his Grantor excepts from this conveyance and reserves unto himself, his heirs and assigns an undivided **one-eighth (1/8) interest in and to all of the oil royalty [and] gas royalty**.... It is understood and agreed that this sale is made subject to the terms of said lease, but the Grantor reserves and excepts unto himself, his heirs and assigns **an undivided one-eighth (1/8) of**

14

**all royalties** payable under the terms of said lease, as well as an undivided one-eighth (1/8) of the usual one-eighth (1/8) royalties provided for in any future oil, gas and/or mineral lease covering said lands or any part thereof.... Nevertheless, neither the Grantee herein, nor his heirs, executors, administrators, and assigns of the Grantee shall make or enter into any lease or contract for the development of said land or any other portion of the same for oil, gas or other minerals, unless each and every such lease, contract, leases or contracts, shall provide for at least a royalty on oil of the usual one-eighth (1/8) to be delivered free of cost.... [A]nd in the event Grantee, nor [sic] the heirs, executors, administrators and assigns of the Grantee, or as in the status of the fee owners of the land and minerals, or as a fee owner of any portion of the same, shall operate or develop the minerals therein, Grantor shall own and be entitled to receive as a free royalty hereunder, (1) an undivided one-sixty fourth (1/64) .... (emphasis added).

*Coghill,* 358 S.W.3d at 835-36.

The reservation in *Schlitter* provides as follows:

Grantor H. F. Smith hereby reserves unto himself, his heirs and assigns for a period of ten years and as much longer thereafter as oil and gas or other minerals are being produced an undivided one-half interest in and to the royalty rights on all of oil and gas and other minerals in, on and under or that may be produced from the land herein conveyed and described above. In the event oil or gas or other minerals are not being produced in paying quantities from said land at the expiration of said ten year period then this reservation shall become null and void and of no further force and effect.

*Schlitter*, 101 S.W.2d at 544.

The reservation in *Stag Sales Company* provides:

[Grantors convey to grantee] an undivided **one-half (1/2) interest in and to all of the oil royalty, gas royalty, royalty** in casinghead gas and gasoline, and royalty in all other minerals in

and under, and that may be produced and mined from [the 2291.2 acre tract].

Said land being now under an oil and gas lease…this sale is made subject to the terms of said lease, but covers and includes one-half of all the oil royalty, gas royalty, casinghead gas and gasoline royalty, and royalty from other minerals or products to be paid under the terms of said lease…

In the event a future lease or leases are executed…then the Grantee shall receive under such future lease or leases an undivided one-sixteen [sic] part of all the oil, gas and other minerals taken and saved under such lease or leases, and shall receive the same out of the royalty therein provided for.

*Stag Sales Company v. Flores*, 697 S.W.2d at 494.

The reservation in *Tyler* provided as follows:

For and in consideration of the sum of Ten Dollars cash in hand paid by Tyler & Smith, hereinafter called Grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell convey, assign and deliver, unto the said Grantee, **an undivided one-tenth interest in and to all of the oil royalty, gas royalty, and royalty in casing** head gas, gasoline, and royalty in other minerals in and under, and that may be produced and mined from the following described lands situated in the County of Henderson and State of Texas.

*Tyler*, 148 S.W.2d at 916.

The deed in *State Natl. Bank of Corpus Christi* provided the following reservation language:

It is expressly agreed and understood that there is reserved to granter, its successors and assigns forever, and excepted from this conveyance an undivided **1/2 interest in and to all of the royalty in** oil, gas, casinghead gas, gasoline, and in

16

all other minerals in and under and that may be produced and mined from the above described land; however, granter does not by this reservation and exception retain any right of participating in the making of future oil and gas lease nor of participating in the bonus or bonuses which shall be received from any future lease nor of participating in any rental to be paid for the privilege of deferring the commencement of a well under any lease, now or hereafter; it being intended and agreed that in no event will any lease or contract be made for the development of said land or any portion of same for oil, gas, or other minerals, providing for a royalty of less than one-eighth on oil and gas.

*State Natl. Bank of Corpus Christi,* 143 S.W.2d at 758.

The language in the deeds in each of the five cases above, cited by Appellant, is not the language in the Reservation. The language in the Warranty Deed shows that under the context of the Reservation, the grantors reserved a ***one-half royalty*** in the Subject Lands. As noted by Appellant, this Court recently provided five examples of language used to create a fraction of royalty. A'ants Br. at 6. Appellant argues that the language in the Reservation is "almost identical" to the language cited in *Dawkins* as reserving a fraction of royalty: "(4) [a]n undivided one-half interest in and to all of the royalty." 450 S.W.3d at 153. However, just because the Reservation has some of the same words does not make the language identical. It is the additional language in the Reservation that makes it clear that a fractional royalty was reserved, and that language cannot simply be ignored so as to fit into Appellant's argument.

What Appellant failed to mention, is this Court also provided six examples of language used to convey a fractional royalty: "*(1) [a] one-fourth royalty in all oil, gas and other minerals in and under and hereafter produced*; (2) [a] fee royalty of 1/32 of the oil and gas; (3) *[a]n undivided one-sixteenth royalty interest of any oil, gas or minerals that may hereafter be produced*; (4) [o]ne-half of the one-eighth royalty interest; (5) [a]n undivided 1/24 of all the oil and other minerals produced, saved, and made available for market; (6) *1% royalty of all the oil and gas produced and saved*." *Dawkins*, 450 S.W.3d at 153. The language cited by this Court as conveying a fractional royalty is consistent with the language found in the Reservation.

A.    Impairment Of Future Leasing Not A Factor

The size of the fractional interest reserved, or the possibility that the reservation would impair the future ability to lease, **are not** factors to be considered in the construction of fractional royalty interest reservations. *White v. White* involved a 3/8ths fractional royalty interest. A 1/4th fractional royalty interest was reserved in *Arnold v. Ashbel Smith Land Co.*, 307 S.W.2d 818 (Tex. Civ. App.—Houston 1957, writ ref'd n.r.e.). The reservation of an undivided ½ nonparticipating royalty entitling the grantor to ½ of all production was not even questioned by the Texas Supreme Court in  *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690 (Tex. 1986).

18

Appellant suggests that "Texas courts are ***charged with*** interpreting deed reservations in a manner that will not frustrate the ability of the mineral owners to enter into a lease at some point in the future" and goes as far as asking this Court to take judicial notice "that Harrells' interpretation of the Reservation would render the Property unleaseable and undevelopable *ad infinitum*." A'ants Br. at 11-12. Appellant cites two cases in support of his argument that Harrells' interpretation of the Reservation hinders future leasing[1]: *Moore v. Noble Energy, Inc.*, 374 S.W.3d 644 (Tex. App.—Amarillo 2012, no pet.) and *Clifton v. Koontz*, 325 S.W.2d 684, 695-96 (Tex. 1959).

In *Moore v. Noble Energy*, the question before the court was whether a reservation in a 1955 warranty deed was ambiguous. 374 S.W.3d 644. The court considered each possible interpretation, and determined that the phrase "one-half non-participating royalty interest," standing along, would reserve to the grantor a fifty percent interest in the production, free of production costs." *Id.* at 650. The court did note that a construction of the 1955 deed to reserve a one-half royalty is "doubtful" but in no way ***charged*** courts with interpreting deed reservations in a manner that will not frustrate the ability of the mineral owners to enter into a lease at some point in the future. What the court was charged with was examining the deed as a whole, including the parenthetical phrase. *Id*. (*citing Columbia Gas*

---

[1] It is important to note that Appellant did not submit, and could not submit, any summary judgment evidence showing that any leasing of the minerals is impaired.

19

*Transmission Corp. v. New Ulm Gas, Ltd*., 940 S.W.2d 587, 589 (Tex. 1996) ([c]onstruction of the language to reserve a one-half royalty would also require that the parenthetical phrase be ignored, contrary to the rule of construction mandating that we examine the deed as a whole)).

In *Clifton v. Koontz,* the issue before the court was whether a lessee violated an implied covenant to reasonably develop the lease at issue by drilling additional wells on a multi-strata property. 325 S.W.2d at 695. The court looked at both "reasonable diligence" and what a "reasonably prudent operator" might do and determined the lessee did not violate the implied covenant to reasonably develop the lease. *Id.* It is not disputed that a reasonably prudent operator should proceed with due regard to his own interests as well as those of a lessor, however the "reasonably prudent operator" standard does not factor into the construction of the reservation language in this deed. Furthermore, the "reasonably prudent operator" or "reasonable diligence" in no way makes the Property unleaseable and undevelopable *ad infinitum*, and such a conclusion is certainly misplaced.

B.     Appellant Did Not Plead Ambiguity

Appellant argues that "it is well-established law that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used." A'ants Br. at 14. Appellant also argues that the Harrells offered no summary judgment

evidence to establish that Harrells did not draft the Warranty Deed. Id. The Harrells did not offer summary judgment evidence because ambiguity was never an issue. Appellant did not plead ambiguity nor did he argue ambiguity in his Motion for Summary Judgment. In the absence of the allegations of ambiguity…parole evidence is not admissible to show the intentions of either the grantor or grantee in the deed, but such intention is to be determined by the trial court as a matter of law from the language which appears in the deed itself, and the deed will be enforced as written. *Reeves v. Towery*, 621 S.W.2 209, 212 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e. (*citations omitted*); *Ayert v. Grande, Inc.*, 717 S.W.2d 891, 893 (Tex. 1986) ("[n]either party contended the 1983 deed is ambiguous, so we construe the language of the deed to ascertain the intent of the parties without considering parole evidence, i.e. as a matter of law"). Appellant has never claimed, and cannot now claim, that the Warranty Deed is ambiguous.

Appellant also argues that it is well-established in Texas that deeds are interpreted to convey the greatest estate possible to the grantee. See A'ants Br. at 15. Appellant's argument is generally true in deed construction, but does not take into account the reservation language. "A general warranty deed conveys all of the grantor's interest *unless* there is language in the instrument that clearly shows an intention to convey a lesser interest." *Reeves*, 621 S.W.2 at 212 (*citing Cockrell v. Gulf Sulphur Co.*, 157 Tex. 10, 15, 299 S.W.2d 672, 675 (1957)). The property

21

intended to be reserved is never included in the grant.  *Benge v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166 (1953).  As shown in the arguments above, the Reservation in the Warranty Deed clearly shows the intention to reserve a fractional royalty interest.

## PRAYER FOR RELIEF

Appellees Charles E. Harrell and Hollis R. Harrell pray that this Court affirm the traditional summary judgment granted by the trial court in favor of the Harrells and against Dragon, in its entirety.  Appellees Charles E. Harrell and Hollis R. Harrell pray for whatever additional relief to which they may be entitled.

Respectfully submitted,

*/s/ Jesse R. Castillo*

Jesse R. Castillo
 State Bar No. 03986600
*jcastillo@casnlaw.com*
CASTILLO SNYDER, P.C.
Bank of America Plaza, Suite 1020
300 Convent Street
San Antonio, Texas  78205
Telephone:  (210) 630-4200
Facsimile:  (210) 630-4210

**Counsel for Appellees Charles E. Harrell and Hollis R. Harrell**

## CERTIFICATE OF COMPLIANCE

In Compliance with Texas Rule of Appellate Procedure 9.4(i)(3), Appellees Charles E. Harrell and Hollis R. Harrell certify that the number of words in Appellee's Brief, including its headings, footnotes, and quotations, is 5,744.

**CERTIFICATE OF SERVICE**

I certify that, on this 18th day of June, 2015, a true and correct copy of the

foregoing Brief of Appellee has been served as follows:

*Clinton M. Butler*
CLINTON M. BUTLER
State Bar No. 24045591
Email: cbutler@langleybanack.com
ELIZABETH R. KOPECKI
State Bar No. 24087859
Email:
ekopecki@langleybanack.com
LANGLEY, BANACK & BUTLER
114 N. Panna Maria Avenue
Karnes City, Texas 78118
Telephone: 830.780.2700
Telecopier: 830.780.2701

ROBINSON C. RAMSEY
State Bar No. 16523700
Email: rramsey@langleybanack.com
LANGLEY & BANACK, INC.
Trinity Plaza II, Suite
900 745 E. Mulberry
Avenue San Antonio,
Texas 78212
Telephone:
210.736.6600
Telecopier: 210.735.6889

*ATTORNEYS FOR APPELLANT*
*PETER J. DRAGON*


/s/ *Jesse R. Castillo*

Jesse R. Castillo